622 P.2d 478

**STATE of Arizona, Appellee,**

v.

**Ronald Paul BISHOP, Appellant.**

**No. 3569–2.**

Supreme Court of Arizona,
In Banc.

Dec. 18, 1980.

Rehearing Denied Jan. 20, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III by David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

David Chamberlain, Prescott, for appellant.

HOLOHAN, Vice Chief Justice.

Ronald Paul Bishop was previously convicted of first degree murder and sentenced to death. This court affirmed the judgment and sentence. *State v. Bishop*, 118 Ariz. 263, 576 P.2d 122 (1978). Subsequently the United States Supreme Court, following their ruling in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), vacated Bishop's death sentence and remanded the case to this court for further proceedings. *Bishop v. Arizona*, 439 U.S. 810, 99 S.Ct. 69, 58 L.Ed.2d 103 (1978).

We remanded the case to the trial court for resentencing on November 14, 1978, to follow the procedure set forth in *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979). A mitigation hearing, following the dictates of *Lockett, supra,* and *Watson, supra,* was held and defendant was again sentenced to death on February 2, 1979. The trial court found one aggravating circumstance in that the murder was committed in a manner which was especially heinous, cruel or depraved, A.R.S. § 13–454(E)(6);* there were no mitigating circumstances sufficiently substantial to warrant leniency. The trial court also heard and denied the defendant's petition filed pursuant to Rule 32 for Post Conviction Relief.

The defendant's Petition for Review of the denial of his Rule 32 petition was consolidated with this appeal pursuant to Rule 31.4(b)(2), Rules of Criminal Procedure, 17 A.R.S.

Defendant raises seven issues for this court's consideration:

---

* Prior to the 1978 Revised Criminal Code the section applicable to sentencing when a defendant was found guilty of first degree murder was A.R.S. § 13–454.

1. Was defendant's motion to preclude application of the death penalty improperly denied?

2. Should defendant have been allowed to reargue aggravating circumstances at resentencing?

3. Was defendant's Petition for Post Conviction Relief improperly denied?

4. Were there mitigating circumstances sufficient to call for leniency?

5. Is the death penalty cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution?

6. Was the death penalty excessive in this case?

7. Is A.R.S. § 13–454 (now § 13–703) violative of the equal protection and due process provisions of the United States and Arizona Constitutions?

I

## MOTION TO PRECLUDE APPLICATION OF DEATH PENALTY

Defendant moved to preclude application of the death penalty on grounds that the death penalty violated the ex post facto clause of the United States Constitution, the double jeopardy clause of the Fifth Amendment, the Eighth Amendment's prohibition against cruel and unusual punishment and the due process and equal protection clauses of the Fourteenth Amendment. It is the defendant's position that because he was resentenced on February 2, 1979, before the legislature amended the old death penalty statute on May 1, 1979, A.R.S. § 13–703, he should be sentenced to no more than life imprisonment. He argues that this court erroneously severed the unconstitutional portion of the former death penalty statute, A.R.S. § 13–454, leaving no viable death penalty statute in effect when appellant was resentenced; therefore, defendant should have been sentenced to not more than life imprisonment.

All of these arguments have been adequately considered and decided adversely to the defendant in *State v. Watson, supra.* See also *State v. Arnett*, 125 Ariz. 201, 608 P.2d 778 (1980); *State v. Mata*, 125 Ariz. 233, 609 P.2d 48 (1980); *State v. Madsen*, 125 Ariz. 346, 609 P.2d 1046 (1980); *State v. Steelman*, 126 Ariz. 19, 612 P.2d 475 (1980); *State v. Jordan*, 126 Ariz. 283, 614 P.2d 825 (1980).

II

## REARGUMENT OF AGGRAVATING CIRCUMSTANCES AT RESENTENCING

The defendant contends that the trial court erred at the resentencing aggravation/mitigation hearing in only allowing evidence relative to mitigating circumstances. The sentence was based upon the earlier hearing regarding aggravating circumstances. In *Arnett, supra*, 608 P.2d at 780, we noted: "When the defendant is to be resentenced, and particularly when the death sentence is possible, it would seem that evidence and testimony should be as fresh as possible. Relying on a hearing conducted months before the imposition of the death penalty is not recommended."

Unlike *Arnett*, Bishop did move at the resentencing hearing to have the trial court reconsider the aggravating circumstances previously found. The denial of his motion was error. However, the defendant did argue and present evidence regarding the aggravating circumstances at the hearing on his Rule 32 Petition for Post Conviction Relief. Any error by the trial judge in the first instance was harmless because the defendant was subsequently able to have the issue of the aggravating circumstances presented and reviewed by the trial court.

Since review of the denial of defendant's petition has been consolidated with this appeal and since we must make an independent review of all the facts to determine the presence or absence of aggravating and mitigating circumstances, *State v. Richmond*, 114 Ariz. 186, 560 P.2d 41 (1976), no fundamental error has been committed requiring a resentencing hearing in the instant case.

## III

### DENIAL OF PETITION FOR POST CONVICTION RELIEF

The sole issue in the Petition for Post Conviction Relief was whether the killing was committed in an especially cruel or depraved manner. The evidence at trial was that the defendant struck the victim in the back of the head several times with a claw hammer. The defendant presented the testimony of Dr. Phillip Keene, the pathologist who examined the victim's body seventeen days after the murder. Dr. Keene testified that the killing was done in such a way that the victim was incapable of feeling pain immediately after the blows to the head. It is the defendant's position that for there to be especially heinous, cruel, or depraved behavior, it must be "unnecessarily torturous to the victim;" therefore, the victim must be able to appreciate some sensation of pain.

■ While defendant's argument has relevance to the question of cruelty, it can have no effect on the question whether the killing was committed in a heinous or depraved manner. As we have previously pointed out, "The aspect of cruelty involves the pain and the mental and physical distress visited upon the victims. Heinous and depraved go to the mental state and attitude of the perpetrator as reflected in his words and actions." *State v. Ceja*, 126 Ariz. 35, 39, 612 P.2d 491, 495 (1980). *See also State v. Clark*, 126 Ariz. 428, 436, 616 P.2d 888, 896 (1980). The presence of any one of the three elements set forth in A.R.S. § 13–454(E)(6) is sufficient to constitute an aggravating circumstance.

■ Although the evidence shows that the victim thrashed about and made gasping sounds, the medical expert was of the opinion that the victim was not conscious of pain. In light of the medical testimony, we conclude that the evidence does not establish the element of "especially cruel."

The trial court also found that the defendant killed the victim in an especially heinous or depraved manner. To determine whether the crime was committed in an especially heinous or depraved manner, we must consider the mental state and attitude of the perpetrator as reflected in his words and actions. *State v. Ceja, supra.*

The record shows that after the defendant struck the victim several times with a hammer, he removed from the victim his watch, wallet and shoes. The defendant, while he knew that his victim was still alive, tied the victim's legs together and dragged him some fifty feet to the edge of a mine shaft. Fred Van Haelst, the defendant's friend, was present but he became ill after witnessing the events. The defendant told Van Haelst to go from the area and act as a lookout.

The defendant claims that the body movements of the victim caused him to fall into the shaft, but the defendant does admit he threw rocks on top of the victim as he lay twitching at the bottom of the shaft.

The defendant along with his companions cleaned up the area and drove from the scene in the victim's automobile. As the defendant was driving away, he turned around and waved, saying, "Good-bye, Norman. I hope we never see you again."

We agree with the findings of the trial judge that the defendant committed the crime in an especially heinous and depraved manner.

## IV

### MITIGATING CIRCUMSTANCES

■ As mitigation the defendant points out that he has no criminal record; he maintains that he acted under duress; he claims that he has subnormal intelligence; finally, he contends that he cooperated with law enforcement officers in the investigation of the case.

It is conceded by the state that the defendant does not have a prior criminal record. The state challenges the defendant's claims of cooperation and acting under duress.

From our review of the record we are satisfied, even as we noted in the first appeal, that the defendant did not act un-

der duress. The evidence is clear that the defendant was the aggressor and that he was not afraid of the victim. The defendant and his friend, Fred Van Haelst, were in control of the situation at all times.

The cooperation with law enforcement officers did not occur until the defendant learned that his friend, Van Haelst, was arrested and was being brought to the station for questioning. Prior to learning of the arrest of Van Haelst the defendant admitted only to stealing the victim's automobile. The subsequent cooperation consisted of a confession and a walk through which was video taped.

The defendant is below average in intelligence, and he only completed the sixth grade in school. Despite these handicaps the defendant appears to have functioned adequately in society. There is no indication that his level of intelligence was of any consequence in being a factor in causing the death of the victim.

The trial court considered the matters presented in mitigation and concluded that they were not sufficiently substantial to call for leniency. We have also reviewed the matters presented in mitigation and conclude that they are not of sufficient weight to justify leniency.

V

## CONCLUSION

The defendant has also urged that the death penalty is cruel and unusual punishment, that it is excessive in this case, and that the death penalty statute violates due process and equal protection. We have carefully considered the arguments of the defendant, but we continue to adhere to our previous views that the Arizona Death Penalty Statute is constitutional. *See State v. Richmond, supra; State v. Watson, supra.*

Considering the evidence present at trial and at the various aggravation/mitigation hearings, we believe that the death sentence imposed by the trial judge is not excessive; therefore, the sentence imposed is affirmed.

STRUCKMEYER, C. J., and HAYS, CAMERON and GORDON, JJ., concur.