623 P.2d 1232

**STATE of Arizona, Appellee,**

v.

**Ernest OSBOND, Jr., Appellant.**

**No. 4810.**

Supreme Court of Arizona,
En Banc.

Jan. 26, 1981.

Rehearing Denied Feb. 24, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Robert S. Wolkin, Tucson, for appellant.

HAYS, Justice.

Appellant, Ernest Osbond, Jr., was tried by the court, sitting without a jury. He was found not guilty of two armed robberies, and adjudged guilty of first degree murder and attempted armed robbery. A sentence of life was imposed for the murder and 7.5 years for the attempted robbery. From these judgments and sentences, appellant appeals. We have jurisdiction pursuant to A.R.S. § 13–4031.

The facts which lead up to the alleged crimes are these. On December 11, 1978, Peter Flannigan, a gas station attendant, was shot and killed during an attempted robbery of a Vickers gas station in Tucson. Detectives of the Tucson police department who were investigating the homicide were informed by the codefendant (who was tried separately) that appellant was the assailant. The detectives went to appellant's residence, his mother's home. His mother consented to a search for a .22-caliber weapon which was purportedly the murder weapon. A similar weapon was found in appellant's mother's nightstand and was identified as hers. The detectives were informed by appellant's mother that appellant was in custody at the Pima County Jail. The detectives arrived at the jail about midnight of December 13 and requested to interview appellant, to which he agreed. Around 2:00 a. m., at the police station, appellant admitted his involvement and his confession was taped. The single issue on appeal is whether appellant's confession was voluntary and therefore properly admitted.

Appellant urges that the admission of his statements was error because 1) he was illegally detained in jail for criminal impersonation, a misdemeanor, at the time the police interrogated him regarding the murder and therefore his confession to the murder was "tainted" by the illegal detention, and 2) that the confession was made involuntarily and is therefore inadmissible. After a careful review of the record, we find that it supports the trial court's determination that the confession was voluntary. We affirm.

The trial court, as required by law, stated for the record its findings that the "defendant was advised of his *Miranda* rights; that the advice was given before any evidence was obtained; that defendant understood his rights; that he waived those rights by discussing the matter; and that therefore his confession was voluntary." The court further found that the detention of the appellant in the county jail on the charge of criminal impersonation was legal. The latter finding constitutes part of the court's determination of the voluntariness of the confession, so we will first address the contention of the appellant regarding the legality of the detention.

At the outset, it appears that the relationship between the detention of appellant on wholly unrelated charges and the

subsequent confession to murder is sufficiently attenuated to render the confession admissible. The test for attenuation from *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), is whether the evidence was procured by exploitation of that illegality rather than by means sufficiently distinguishable to be purged of the primary taint. The discovery of the appellant which led to his subsequent confession was not the result of the magistrate's actions. There was no exploitation of any prior illegal police conduct in the attainment of appellant's confession. No deterrent purpose is served by applying the exclusionary rule in these circumstances. *State v. Lamb*, 116 Ariz. 134, 568 P.2d 1032 (1977).

Second, appellant contends that the confession is involuntary because the fact of his incarceration at the time he was interrogated by the officers about the murder created the type of psychological coercion denounced in *Miranda*.[1] The law is clear regarding the involuntariness of confessions and is set forth in *State v. Arnett*, 119 Ariz. 38, 42, 579 P.2d 542, 546 (1978):

"[W]e start with the proposition that in Arizona confessions are prima facie involuntary and the burden is on the State to show that they were freely and voluntarily made, and not the product of physical or psychological coercion. *State v. Bishop*, 118 Ariz. 263, 576 P.2d 122 (Filed March 1, 1978); *State v. Edwards*, 111 Ariz. 357, 529 P.2d 1174 (1975). Thus, the State must show 'by a preponderance of the evidence' that the confession was freely and voluntarily made. *State v. Knapp*, 114 Ariz. 531, 562 P.2d 704 (1977); *State v. Arredondo*, 111 Ariz. 141, 526 P.2d 163 (1974). The trial court must look to the totality of the circumstances surrounding the giving of the confession, as presented at 'voluntariness' hearings, and decide whether the State has met its burden. *State v. Knapp, supra; State v. Toney*, 113 Ariz. 404, 555 P.2d 650 (1976); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); A.R.S. § 13–1599. However, the trial

court's determination of admissibility will not be upset on appeal, absent clear and manifest error. *State v. Bishop, supra; State v. Jordan*, 114 Ariz. 452, 561 P.2d 1224 (1976); *State v. Edwards, supra.*"

From the circumstances here, we cannot find that appellant's "free will" was overborne. The evidence indicates that on midnight, the second night in jail, after having slept six hours the night before, appellant was awakened and agreed to talk with the detective-officers. After a short introduction of their purpose (to question him regarding the murder of the gas station attendant) and after stating that they had seized a gun from his mother's home and had spoken to the codefendant, appellant was advised of his rights. Appellant indicated he understood his rights, and denied knowledge of the incident. One of the officers suggested they leave but appellant twice requested them to stay because he was concerned that what he had done carried a "heavy penalty." In response, the officers informed appellant that life imprisonment or the death penalty could be imposed for a first-degree murder conviction. During the 8–10 minute interview, appellant admitted his involvement in the murder. He did not appear sleepy nor had he requested counsel. Around 1:45 a. m., appellant was asked and agreed to have his confession taped at the police station. On the tape, he recites that no part of the confession was made as a result of any threats, force nor promises. We will not upset the trial court's determination of voluntariness and admission of appellant's confession because there has been no showing of clear and manifest error on appeal.

The judgment of conviction and the sentences are affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and CAMERON and GORDON, JJ., concur.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).