639 P.2d 323

STATE of Arizona, Appellee,

v.

Alexander Macnab DALGLISH, Appellant.

No. 5172.

Supreme Court of Arizona, In Banc.

Jan. 7, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by James R. Hart, II, Deputy Public Defender, Phoenix, for appellant.

Alexander Macnab Dalglish, in pro. per.

CAMERON, Justice.

This is an appeal from a jury verdict and judgment of guilt to the crime of first degree murder, A.R.S. § 13–1105, and a sentence of life imprisonment without possibility of parole for 25 years. A.R.S. § 13–703. We have jurisdiction pursuant to A.R.S. §§ 13–4031 and –4035.

We must answer the following questions on appeal:

1. Was the defendant prejudiced by the granting and then the denying of the motion to suppress?
2. Did the trial court err in failing to suppress defendant's statements as being involuntary?
3. Was defendant's prior conviction admissible for impeachment purposes?
4. Did the trial court err in refusing to allow the defendant to introduce specific instances of conduct and character traits of the victim?
5. Did the trial court incorrectly and inadequately instruct the jury regarding the lesser included offense of murder in the second degree?

In addition, defendant, in his supplemental brief filed in propria persona, claims error because:

6. a key prosecution witness committed perjury, and
7. he was denied effective assistance of counsel because his attorney did not call a particular witness.

The facts necessary for a determination of this matter are as follows. The defendant was one of a group that pooled their money, totaling a little over $1,000.00, to make a purchase of drugs (Dilaudid). The money was given to the victim who was to go to his source and return with the drugs. When the victim did not return, the group assumed that they had been "ripped off" and that the victim was not going to provide the drugs or return the money. The next day, defendant went to the victim's house trailer in Phoenix, Arizona. Defendant had a .45 caliber semi-automatic pistol which he pointed at the victim. The defendant testified that he was afraid of the victim, that the victim had blackened one of his eyes a few days before, and that he believed the victim carried a gun. The defendant also testified that he did not intend to shoot the victim but only to scare him. The defendant stated that after some discussion, he shot into the ground as he chased the victim around his trailer, and that it was only after he perceived that the victim was reaching into his pocket for a gun that he shot at the victim. Witnesses at the trailer court testified as to the events, and there is no question defendant shot the victim. Shortly after the crime, the defendant was arrested and gave statements concerning the shooting in which he claimed self-defense.

The jury returned a verdict of guilty of first degree murder, and the court sentenced the defendant to life imprisonment. The defendant appeals.

## RECONSIDERATION OF THE MOTION TO SUPPRESS

Defendant contends that he was prejudiced by the manner in which the motion to suppress was handled by the trial court. Prior to trial, defendant made a motion to suppress statements made after his arrest. The court, after a hearing, granted the motion to suppress based upon lack of probable cause to arrest. The State then moved to reconsider, and the trial court deferred ruling on the motion. In the interim, the jury was sworn, opening statements were made, and witnesses were called and testified. The court eventually heard the State's motion to reconsider at which time Officer Oviedo testified that he had been mistaken in his previous testimony which had been the basis of the trial court's decision to grant the motion to suppress. Based upon Officer Oviedo's new testimony, the trial court denied the motion to suppress. The court, in changing its ruling, stated, however:

"Frankly, I am concerned that an experienced police officer like Oviedo could take the stand and testify as he did with respect to a pertinent and material issue in the case, as it might deal with probable cause, and then later under the guise of a Motion to Reconsider, change that testimony. His testimony became diametrically opposed to what he testified to before, at least in the court, on a very material issue in this case, that dealing specifically with probable cause."

The defendant then moved for a mistrial, or in the alternative, a motion for continuance, stating:

" * * * I have prepared for trial, and it is my recollection that the Court ruled back in September that the statement was not admissible in this matter. I have prepared for trial on the basis that that was the ruling that we would abide by during the trial of this matter.

"We come to the second day of trial and the opening statements, and after testimony began, and most importantly, after I have given an opening statement based upon the Court's previous ruling at that time, the Court under the circumstances changed its mind and reversed itself. * * * "

When pressed by the court to specifically state wherein he was prejudiced, the defendant was unable to do so:

"THE COURT: I am trying to determine whether or not you have been prejudiced by the Court's ruling.

"MR. TIDWELL: Well, I can't answer that question at this point. I am asking for time to consider my position."

▆ We do not view with favor the procedure followed by the trial court in this case. To change a ruling on a motion to suppress in the middle of the trial can be prejudicial to one or both parties. It is only because the defendant was unable both in the trial court and in this court on appeal to show prejudice that our hand is stayed. Had the defendant been able to show prejudice, we would be persuaded to consider favorably the relief requested. Based upon the facts in this case, we find no reversible error.

### MOTION TO SUPPRESS

▆ The defendant further contends, however, that the court erred in denying the motion to suppress. Although the basis for the trial court's ruling which originally granted the motion to suppress was lack of probable cause to arrest, the defendant does not raise this question on appeal, and we do not consider it in this opinion. We do consider, however, defendant's allegation that the statements were given in return for a promise by the police that they would release defendant's girl friend, Michelle Pifer,

and not charge her with any crime. Defendant relies on the language of this court that such statement may not be obtained by a direct or implied promise, however slight. *State v. Smith*, 123 Ariz. 243, 599 P.2d 199 (1979). We agree with defendant's statement of the law, but we do not agree that the facts support defendant's position that his statements were made in return for a promise of favorable treatment for his girl friend. There were two officers who interrogated the defendant. As to Officer Hawkins, defendant admits that the officer did not make any promise in return for defendant's statement. As to Officer Oviedo, however, defendant testified:

"Q * * * Can you tell us the conversation immediately before you made the statement?

"A Oviedo was back in there and Hawkins was still there, and I think I said that—'Do you mean if I don't make a statement that she is not—you are not—until I make a statement you are not going to let Chelle go?

And Oviedo replied, 'When you give us a statement and we see that she has no involvement, we will let her go.'

* * * * * *

"Q Did you respond to that?

"A Yes, I did.

"Q What did you say?

"A I said I will give the statement."

The officers, on the other hand, denied making any promises in return for defendant's statements. Officer Hawkins, for example, testified:

"A I asked if he could tell me where the—where a weapon was at, a .45 caliber weapon. And he asked me whether or not that I would—if Michelle, his girlfriend, Michelle Pifer was to be held to answer for this particular crime.

"Q Up to this time was Gus Oviedo still in the room?

"A I believe so.

"Q What happened next?

"A I asked him point blank if she had been involved in this crime, and he

assured me she had not. I advised him then that I personally had no other knowledge of any evidence in order to hold her in the crime, and that if the police department did not have any evidence to involve her in the crime, that we could not hold her.

"Q Then what happened?

"A I believe about this time Officer Oviedo left the room shortly, and I asked him again if he would assist me in getting to the bottom of that. And he asked again the same question reference Michelle, and my response was the same.

At that point he indicated that he would go ahead and make a statement. And I said, 'Go ahead, and I will bring Officer Oviedo back in the room'."

■ Even though the State must show " 'by a preponderance of the evidence' that the confession was freely and voluntarily made," *State v. Arnett*, 119 Ariz. 38, 42, 579 P.2d 542, 546 (1978); *State v. Knapp*, 114 Ariz. 531, 562 P.2d 704 (1977); *State v. Arredondo*, 111 Ariz. 141, 526 P.2d 163 (1974), and the trial court must look to the totality of the circumstances to determine if the State has met its burden, *Arnett* and *Knapp,* supra, we will not overturn the trial court's determination absent clear and manifest error. *State v. Arnett*, supra; *State v. Jordan*, 114 Ariz. 452, 561 P.2d 1224 (1976), vacated on other grounds, 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157 (1978). We believe there was sufficient evidence from which the trial court could find that the State, by a preponderance of the evidence, carried its burden of showing the statements voluntary.

■ Defendant contends, however, that the trial court never made a finding of voluntariness. We have stated on numerous occasions that the trial court must make a specific determination of voluntariness before the statements may be considered by the jury. Thus we have held that a trial judge's statement that the State had made a prima facie showing of voluntariness was inadequate. *State v. Costello*, 97 Ariz. 220, 399 P.2d 119 (1965); *State v. Marovich*, 109

Ariz. 45, 504 P.2d 1268 (1973), and that a statement that the "objection is overruled" is insufficient, *State v. Mileham*, 100 Ariz. 402, 407, 415 P.2d 104, 107 (1966); *State v. Ramos*, 108 Ariz. 36, 492 P.2d 697 (1972).

■ The purpose of these rulings is to assure that the trial court makes a separate and definite threshold determination of admissibility before allowing the jury to consider the evidence. In the instant case, the matter is confused by the fact that prior to trial, the court granted the defendant's motion to suppress. Although the court did not make it clear in denying the motion to suppress that it was also ruling the confession voluntary, the court later clearly indicated that it was doing so, stating:

"Now I have previously determined in this matter, Mike, that the statements made were voluntary."

What we have criticized in prior cases was the practice of allowing statements to go to the jury without a threshold ruling of admissibility by the trial judge. In the instant case, even though not contemporaneous with the denial of the motion to suppress, there is no question that the court did make such a finding prior to consideration of the evidence by the jury. We find no error.

### DEFENDANT'S PRIOR CONVICTION

Defendant had a prior (1975) conviction for conspiracy to distribute heroin. The conviction was five years old. As to convictions less than 10 years old, our statute reads:

"(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record, if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, and if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (2) involved dishonesty or false statement, regardless of the punishment." Rule 609(a), Arizona Rules of Evidence, 17A A.R.S.

In the instant case, the prior conviction was punishable by imprisonment for more than one year.

■ The trial court, in denying defendant's motion in limine, conceded the prejudicial effect of the prior conviction, but held that the probative value of the prior conviction outweighed the prejudice. We agree. The prior felony conviction for the crime of conspiracy to distribute heroin is five years old. While certainly prejudicial, we believe it had a direct bearing on defendant's credibility. Our Court of Appeals has stated: " * * * we, as do the federal courts, recognize that any felony even if it does not involve false statement or dishonesty, has probative value on the issue of the credibility of the defendant.

"Under Rule 609(a) the trial court has wide discretion in deciding whether to exclude evidence of prior convictions because its prejudicial effect is greater than its probativeness on lack of credibility. (citations omitted) The exercise of this discretion should not be disturbed absent a clear showing of abuse. (citation omitted). * * * " *State v. Dixon*, 126 Ariz. 613, 618, 617 P.2d 779, 784 (App.1980).

We do not believe the trial court abused its discretion in admitting the prior conviction. We find no error.

### FAILURE TO ALLOW INTRODUCTION OF SPECIFIC INSTANCES OF CONDUCT AND CHARACTER TRAITS OF THE VICTIM

Defendant next contends that it was error to deny defendant the right to introduce specific instances of conduct and character traits of the victim. The defendant contends that because the defense was self-defense, the victim's conduct was critical to that defense.

Rule 404(a)(2) of the Arizona Rules of Evidence, 17A A.R.S., provides:

"(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

   *    *    *    *    *    *

"(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;"

The court allowed the defendant to present evidence of the victim's character. Defendant was allowed to show he had a fight with the victim, that he was hit and suffered a black eye, that the victim tried to borrow a gun to commit a robbery, that the victim robbed a defense witness with a gun and slapped him on the side of the head with a gun to the extent that his ear bled, and that the defendant knew of the victim's activities.

■ Defendant contends, however, that on several occasions the court limited the questioning regarding the prior conduct and character of the victim which evidence was important to the defendant's claim of self-defense. Defendant, in his brief, cites as an example:

"Q Did you ever make inquiry of Alex, how he got the blackeye?

"A Yes.

"Q Do you recall what he told you?

"A Yes.

"Q Tell the jury.

"MR. PATCHELL: Objection, hearsay.

"THE COURT: Sustained."

We believe that, without more, the hearsay objection was properly sustained. While the defendant is entitled to elicit evidence of the victim's prior bad acts in order to show his character, a defendant is still required to abide by the rules of evidence when presenting those bad acts. We find no error.

### LESSER INCLUDED OFFENSE

The court gave the standard instructions concerning first degree murder and second degree murder, and the differences between first degree murder and second degree mur-

der. The defendant contends it was error not to give the following additional instruction:

"A. A person commits second degree murder if without premeditation:

* * * * * *

"(3) Under circumstances manifesting extreme indifference to human life, such person recklessly engages in conduct which creates a grave risk of death and thereby causes the death of another person."

■ We have stated that in a death penalty case, the court has the duty to instruct on every degree of homicide embraced in the information and supported by the evidence, regardless of whether or not it is requested by the parties. *State v. Vickers*, 129 Ariz. 506, 633 P.2d 315 (1981). In the instant case, we do not believe the requested instruction is supported by the evidence. As the defendant testified:

"Q With that shot you intended to hit him?

"A. Yes, I did aim at him for fear that he was coming up with a gun.

"Q I understand that you intended to hit him?

"A Well, yes, I guess I would have intended to hit him for fear that he was coming up with a gun to stop it."

It is clear from defendant's own testimony that as to the bullet which killed the victim, the shot was deliberate and intentional and not indifferent or reckless. An instruction on reckless conduct or indifference was not mandated or supported by the facts. We find no error.

## PERJURY OF KEY WITNESS

Defendant contends in his "brief pro per" that a key prosecution witness committed perjury. Defendant contends that Bob Judd committed perjury while testifying and that the State prosecutor collaborated with Judd in the perjury.

Bob Judd was about 200 feet from the defendant and the victim and he immediately called the police to report the matter. Detective Butler took a statement from Judd at the scene which was contained in a departmental report. During trial, Judd was called by the State to testify and was cross-examined by defendant's counsel concerning inconsistencies between his trial testimony and the contents of the report.

■ Defendant's allegations appear to be based upon the fact that Judd's trial testimony was not identical to the statements he made to the police officers immediately after the homicide. A review of the record indicates there were inconsistencies in Judd's testimony. For example, the departmental report indicated Judd had stated the defendant and the victim were approximately 12 feet apart at the time of the shooting; at trial he stated they were 25 feet apart. We believe this and other inconsistencies can be expected as the time between the crime and the trial lengthens. These inconsistencies were examined and developed by defendant's counsel and do not appear to be vital or prejudicial. None of the inconsistencies indicate that the witness was perjuring himself. The record does not support defendant's conclusion in this regard. We find no error.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next contends that the failure of his attorney to call Steven Davis, a "crucial" witness, "especially in discrediting Bob Judd's testimony," was a denial of assistance of counsel. Steven Davis lived in a school bus that had been converted to a mobile home. Davis had parked his bus near the place where the shooting occurred and was inside the bus when the shooting occurred. Davis gave a statement to Officer Butler. Davis's testimony conflicted with that of Judd and the defendant in that he indicated that the victim was chasing the defendant before the defendant shot the victim. Davis had given the California address of his mother-in-law as a place where he could be reached. Defendant's attorney did not contact Davis and according to defendant stated, "I didn't try to contact him that way and I don't think we will need him anyway." Defendant's attorney's decision

not to call Davis appears to have been a deliberate tactical decision on the part of the defendant's attorney.

We have discussed two standards for ineffective assistance of counsel: the farce, sham or mockery test, see *State v. Williams*, 122 Ariz. 146, 593 P.2d 896 (1979), or the reasonably competent and effective "diligent conscientious advocate," *Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir. 1978), cert. denied 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979), see also *State v. Ortiz*, 131 Ariz. 195, 639 P.2d 1020 (1981). We have also stated that "matters of judgment or tactics will not be reviewed in the harsh light of hindsight." *State v. Pacheco*, 121 Ariz. 88, 91, 588 P.2d 830, 833 (1978).

We do not find that the tactical decision by the defendant's attorney not to call Davis was a denial of assistance of counsel or indicated ineffective assistance of counsel. We find no error.

Affirmed.

HOLOHAN, C. J., GORDON, V. C. J., and STRUCKMEYER and HAYS, JJ., concur.