673 P.2d 17

**STATE of Arizona, Appellee,**

v.

**Robert Douglas SMITH, Appellant.**

No. 5595.

Supreme Court of Arizona,
In Banc.

Sept. 28, 1983.
Reconsideration Denied Nov. 8, 1983.

**80**

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Lawrence H. Fleischman, Asst. Public Defender, Tucson, for appellant.

CAMERON, Justice.

Defendant, Robert Douglas Smith, was tried before a jury and convicted of first degree murder, A.R.S. § 13–1105, kidnapping, A.R.S. § 13–1304(A)(3), and sexual assault, A.R.S. § 13–1406. In addition, the kidnapping and sexual assault were found to have been dangerous felonies, involving the infliction of serious physical injury, A.R.S. § 13–604. Defendant was sentenced to death for the murder, to 21 years imprisonment for the kidnapping, and to 21 years imprisonment for the sexual assault, to be served consecutively to the sentence for kidnapping. The case was automatically appealed to this court pursuant to Rules 26.15, 31.2(b), Arizona Rules of Criminal Procedure, 17 A.R.S.; we have jurisdiction pursuant to Art. 6, § 5(3) of the Arizona Constitution, and A.R.S. §§ 13–4031 and 13–4035.

The issues we must decide on appeal are:

I. Does the use of a dual jury procedure at trial constitute reversible error?

II. Did the trial court lack venue over the homicide charge?

III. Was it error to allow an official of the Pima County attorney's office to testify regarding the grant of immunity to an accomplice?

IV. Did the trial court err in failing to give one of the defendant's proffered jury instructions?

V. Is the Arizona death penalty statute unconstitutional?

VI. Is the statutory aggravating circumstance of killing in an "especially heinous, cruel, or depraved manner" unconstitutionally vague?

VII. Is there a right to have a jury participate in sentencing where the death penalty is imposable?

VIII. Is it unconstitutional to place the burden of proof of mitigating circumstances on the defendant?

IX. Did the trial court err in placing limits on recross-examination?

X.  Were defendant's statements voluntary?

XI.  Did the prosecutor's closing argument contain fundamental error?

XII.  Did the trial court err in failing to instruct the jury on second degree murder?

XIII.  Did the trial court properly exclude from evidence an exculpatory hearsay statement made by the defendant to a police officer?

XIV.  Is imposition of the death penalty foreclosed in this case by *Enmund v. Florida?*

XV.  Does the court find in its independent review that the death penalty was appropriate in this case?

XVI.  Is the death penalty in this case proportionate to the disposition of other similar cases?

The first eight issues raised in this appeal have been decided and discussed in the companion case of *State v. Lambright,* 138 Ariz. 63, 673 P.2d 1 (1983). A summary of facts necessary for the determination of this appeal is also contained in that opinion.

## IX.  LIMITATION OF RECROSS–EXAMINATION

■ Defendant asserts that the trial court erred in limiting his right to recross-examine the state's key witness, Kathy Foreman. The control of cross-examination is left to the sound discretion of the trial judge and will not be disturbed on appeal absent a showing from the record of an abuse of discretion. *State v. Thomas,* 110 Ariz. 106, 109, 515 P.2d 851, 854 (1973). Further,

> The right of confrontation and cross-examination of adverse witnesses is of fundamental importance, but it is not a right without limitation. It is well established in Arizona, as well as in many other jurisdictions, that there is no right to re-cross unless some new issue arises during redirect; otherwise, it is a matter of the trial court's sound discretion. (Citations omitted.) *State v. Jones,* 110

Ariz. 546, 550, 521 P.2d 978, 982, cert. denied 419 U.S. 1004, 95 S.Ct. 324, 42 L.Ed.2d 280 (1974), quoted in *State v. Williams,* 113 Ariz. 14, 16, 545 P.2d 938, 940 (1976).

■ In the instant case the judge offered the defendant a full opportunity to recross-examine the witness on any new areas brought out on redirect, and because he was tried together with another defendant, he also gave him the opportunity to conduct recross on any new point opened up on cross-examination by the co-defendant. Defendant's counsel declined to specify any new areas he wished to inquire into on recross-examination, so the trial judge did not permit recross-examination to proceed. A party has no right to use further cross-examination to repeat or re-emphasize matters already covered on direct or cross-examination. The court may inquire into the nature and purpose of the further cross-examination to determine whether to permit it or limit its scope. *State v. Loftis,* 89 Ariz. 403, 405–06, 363 P.2d 585, 587 (1961).

We find no error.

## X.  VOLUNTARINESS OF STATEMENTS

■ Robert Smith was arrested at about 9:00 a.m. on 14 March 1981 at an apartment complex in South Houston, Texas. He was arrested by officer John W. Laird of the Texas Department of Public Safety, who was accompanied by Robert Petty, another Texas DPS officer, and two South Houston policemen. Officer Laird read Smith his Miranda rights, and Smith acknowledged that he understood them. No questions were asked at the time of arrest. Smith was taken to the South Houston Police Department, and a magistrate was summoned. The magistrate advised Smith of the charges against him, and read him his constitutional rights a second time. Defendant then agreed to talk to agents Laird and Petty. The officers told him that Kathy Foreman had admitted her participation in the crimes and had implicated Smith. The officers also explained the nature of the

charges against Smith. Smith then made his first confession. In this first statement, Smith set forth the basic facts surrounding this crime, including his substantial involvement in the incident. In this first statement he told authorities that Kathy Foreman was the person who actually stabbed the victim.

Officer Laird told Smith the story just did not sound right somehow, and asked if he was sure it was the truth. Smith then became somewhat emotional, and said he had lied in order to protect his friend Lambright.

He then made a second statement, which paralleled the first one except that Smith now stated it was Lambright who stabbed the victim, and that both Lambright and Foreman cut the victim's throat. After the second statement Smith asked if he could see his wife. The officers granted the request and arranged for her to come down and see him. He visited with his wife and her mother for approximately an hour. The officers went in and out of the room several times as they got food and beverages for themselves and Smith. The officers testified that while they were in the room the defendant and his wife were talking about religion, and they observed the defendant crying.

After seeing his wife, Smith met with Laird and Petty again, and gave them a third statement which was similar to the second statement, but which was far more detailed. The defendant also expressed a willingness to give a written statement. Two days later he did give a written statement to the Texas authorities, after being given another set of constitutional warnings.

Defendant's final statement was made in Arizona to detective Gary Dhaemers of the Pima County Sheriff's Department. He agreed to answer questions in a taped interview. A transcript was made of the interview, which the defendant was given the opportunity to review, correct, and sign. The trial judge found that each of Smith's confessions was voluntary and admissible.

As we noted in *State v. Lambright,* supra, filed this date,

> The trial court must look to the totality of the circumstances surrounding the giving of the confession, as presented at "voluntariness" hearings, and decide whether the State has met its burden. However, the trial court's determination of admissibility will not be upset on appeal, absent clear and manifest error. (Citations omitted.) *State v. Arnett,* 119 Ariz. 38, 42, 579 P.2d 542, 546 (1978), quoted in *State v. Osbond,* 128 Ariz. 76, 78, 623 P.2d 1232, 1234 (1981). *Accord State v. Dalglish,* 131 Ariz. 133, 137, 639 P.2d 323, 327 (1982).

No clear and manifest error is present in the instant case. We do not find the circumstances surrounding the giving of these confessions to have been inherently coercive. Nor do we find it was improper, as suggested by defendant, for the officers, when explaining the charges against Smith, to accurately inform him that he had been implicated in the crime by Foreman.

■ Defendant further alleges as specific error the fact that detective Dhaemers brought the transcript of the last confession directly to Smith for his review, instead of delivering it to his attorney. It is apparent, however, that when Dhaemers delivered the transcript to Smith for his corrections and signature, he fully apprised the defendant of his right to have counsel assist him. In officer Dhaemers' uncontradicted testimony, he stated:

> Well, I had gone through [the transcript] as best I could, and then I took it over to the jail and asked Mr. Smith if he wanted the opportunity to go through the transcript of the tape that he had given to me.

> He indicated that he did. He wanted to go through it.

> I advised him he had the right to have an attorney with him. He already had an attorney appointed to him and if he wanted that attorney there, he could have him there before we went through the statement and reviewed it.

He indicated to me that his attorney said that—had told him not to talk to anybody, but he wanted to talk to us and he wanted to go through his statement, his attorney would be mad at him because he did this, but he wanted to do this anyway.

This is not a case in which the police resorted to subterfuge in an attempt to deprive the defendant of his right to counsel, *See Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Here it is clear Smith was offered the assistance of his appointed counsel to review the transcript, and he validly waived it. Nor is this a case in which the defendant ever invoked his right to have counsel present during questioning, or expressed his desire to deal with the police only through counsel. *See Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378, 386 (1981). In any event, we also note that the defendant made only minor typographical changes to the draft in question, which would have been admissible with or without defendant's corrections and signature, and which was cumulative of numerous other valid confessions. We find no error.

## XI. PROSECUTORY CLOSING REMARKS

The defendant raises on appeal the following remark made by the prosecutor in his closing argument, in regard to the role of defense counsel. The prosecutor stated:

Looking at jobs, Mr. Hippert's job was to get his client off. That's it. My job is to produce this evidence and argue from it and ask you to convict for a crime which Mr. Smith should not be let go. Mr. Hippert is asking you to let him go, to let him walk out of the courtroom after being involved in the things he did.

This remark was made in response to the following statement in defense counsel's closing argument:

Now [the prosecutor], when he was standing up here said that your job or your purpose is to apply the law to the case.

Well, his job is to make things easy for the government, to grease the wheels * *.

■ Opposing counsel must timely object to any erroneous or improper statements made during closing argument or waive his right to the objection, except for fundamental error. *State v. Denny,* 119 Ariz. 131, 134, 579 P.2d 1101, 1104 (1978); *accord State v. Young,* 116 Ariz. 385, 386, 569 P.2d 815, 816 (1977) ("failure to object to a closing argument is a waiver of any right to review an appeal unless so prejudicial as to deny the defendant a fair trial.") It is also apparent that any error was invited by defendant. As we said in *State v. Marvin,* 124 Ariz. 555, 558, 606 P.2d 406, 409 (1980),

We have recognized that improper remarks by the prosecution, if they are provoked by opposing counsel or are in retaliation for certain statements, are not grounds for reversal unless they are so prejudicial as to constitute reversible error. (Citations omitted.)

*See also State v. Bowie,* 119 Ariz. 336, 343, 580 P.2d 1190, 1197 (1978) ("In this case, the error, if any, in the prosecutor's comments, was invited by the defense counsel's closing argument. The appellant may not benefit from an error which he invited."); *accord, State v. Purcell,* 117 Ariz. 305, 308, 572 P.2d 439, 442 (1977). Thus under both the waiver and invited error doctrines, the above comments of the prosecutor do not require reversal unless they constitute fundamental error.

■ We are unable to find that the remark by the prosecutor in the instant case constitutes fundamental error. This remark was not of a highly prejudicial nature, so likely to inflame or bias the jury as to deny defendant his right to a fair trial. Even under the higher standard of scrutiny applied in cases where the question of a prosecutor's allegedly improper comment has been properly preserved for appeal, we would be unable to say this comment "probably influenced the jury's verdict." See *State v. Sullivan,* 130 Ariz. 213, 218, 635 P.2d 501, 506 (1981), quoting *State v. Sus-*

*taita,* 119 Ariz. 583, 594, 583 P.2d 239, 250 (1978). We find no reversible error.

## XII. FAILURE TO INSTRUCT ON SECOND DEGREE MURDER

■ The defendant asserts that the trial court erred in failing to instruct the jury on second degree murder. In cases which may result in the death penalty, the trial judge is required to instruct on lesser included offenses when the evidence would have supported such a verdict, regardless of whether requested to do so by the defendant. *State v. Vickers,* 129 Ariz. 506, 513, 633 P.2d 315, 322 (1981), *citing* to *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). The defendant argues that parts of his confession could have been interpreted to suggest a lack of premeditation by him, and thus the evidence could have supported a verdict of second degree murder. The trial judge apparently felt the confessions fairly read did not tend to negate the element of premeditation, as he rejected this argument and refused the instruction.

■ To support an instruction for second degree murder, the evidence reasonably construed "should tend to show lack of premeditation." *State v. Moreno,* 128 Ariz. 257, 261, 625 P.2d 320, 324 (1981). All of the relevant evidence at trial suggests that the kidnapping was still in progress at the time of the killing; there was no suggestion that Ms. Owen was free to leave at the time Smith began choking her. Furthermore, the uncontradicted evidence before the jury, including Smith's own statements, established that the reason for the killing was to prevent Ms. Owen from pressing charges of kidnapping and rape, and that the co-defendants knew this was the reason when they proceeded to kill her. The choking of Ms. Owen by Smith was the first of the acts in the sequence of stabbing, cutting and crushing with a rock that led to her death. Under these circumstances, we do not believe that the evidence supports a claim of lack of premeditation on Smith's part. We hold that the trial court did not abuse its discretion in refusing the requested instruction.

## XIII. HEARSAY STATEMENT TO OFFICER

Defendant argues that it was error for the court to refuse to admit into evidence an exculpatory hearsay statement made by the defendant to a police officer. Defendant suggests that the statement is admissible under either of the residual hearsay exceptions, Rules 803(24) and 804(b)(5), Arizona Rules of Evidence, 17A A.R.S.

■ Each of those residual exceptions require the out of court statement to have "equivalent circumstantial guarantees of trustworthiness" as the other stated hearsay exceptions. *Id.* In *State v. Spratt,* 126 Ariz. 184, 187, 613 P.2d 848, 851 (App.1980), our Court of Appeals held that a defendant's out of court assertion of his innocence lacked equivalent sufficient circumstantial guarantees of trustworthiness to make it admissible under the residual exception of Rule 803(24), and therefore the statement was properly excluded. Similarly in *State v. Duffy,* 124 Ariz. 267, 275, 603 P.2d 538, 546 (App.1979), the court held that the trustworthiness of defendant's self-serving out of court statements was "highly suspect," and therefore the trial court properly denied their admissibility. In the instant case the trial judge specifically stated as the reason for his ruling,

> * * * I'm going to deny the admission under either Exception 5 to Rule 804 or Exception 24 to Rule 803 on the grounds that it does not have the circumstantial guarantees of trustworthiness [or] that it is a statement sufficiently against his interest to bring it within the ambit of the rule.

We find no error.

## XIV. PROPRIETY OF SENTENCE UNDER *ENMUND v. FLORIDA*

The defendant claims that the death penalty is impermissible in this case under the rule announced in *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), which places limits on the imposition of the death penalty based on accomplice or felony murder theories. The United States

Supreme Court held in Enmund that imposition of the death penalty would violate the Eighth and Fourteenth Amendments where the defendant did not kill, attempt to kill, or intend to kill. Defendant argues that because his case was submitted on both premeditation and felony murder theories, the jury's verdict of guilty of first degree murder does not establish that he killed, attempted to kill, or intended to kill.

In *State v. McDaniel,* 136 Ariz. 188, 199, 665 P.2d 70, 81 (1983), we stated,

> We agree with the defendant's claim that in first degree murder cases where the jury is instructed on felony murder as well as premeditated murder, a general verdict finding the defendant guilty of first degree murder does not establish whether the defendant had in fact killed, attempted to kill, or intended to kill.

In order to insure compliance with the specific requirements of *Enmund,* we instructed our trial courts,

> * * * that in future cases where the jury might have found the defendant guilty of first degree murder based on a felony-murder theory, the trial judge must determine beyond a reasonable doubt prior to imposing a sentence of death that the defendant killed, attempted to kill or intended to kill. *Id.* at 199, 665 P.2d at 81.

Although the trial in this case took place prior to *State v. McDaniel,* supra, the trial judge made findings in his Special Verdict of the type contemplated in that opinion. The trial judge held,

THE COURT DOES FIND BEYOND A REASONABLE DOUBT THAT THE DEFENDANT, ROBERT DOUGLAS SMITH, COMMITTED THE OFFENSE OF MURDER WITH * * * PREMEDITATION.

THE COURT FURTHER FINDS while this defendant was legally accountable for the conduct of another under the provisions of A.R.S. 13–303, this defendant's participation was not min[o]r, but was MAJOR and that in addition thereto, that this defendant planned and premeditated the killing and consummated the act. * *

THE COURT FURTHER FINDS that this defendant did foresee that his conduct would cause the death of another person; that he deliberately intended to cause that death. * * * (Emphasis in original.)

■ The trial court clearly found that defendant both killed and intended to kill. The trial judge made specific findings that Smith and Lambright discussed killing the victim, that the killing commenced when Smith began strangling the victim, and that Smith held the victim while she was being stabbed. We have reviewed the record and find the evidence supports these findings. Because the defendant participated in the killing, and intended to kill, the death penalty is not impermissible under *Enmund v. Florida,* supra.

## XV. INDEPENDENT REVIEW

In each death penalty case we conduct an "independent review of the facts that establish the presence or absence of aggravating and mitigating circumstances[,]" and then "determine for ourselves if the latter outweigh the former when we find both to be present." *State v. Richmond,* 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976) (citations omitted), cert. denied 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1976).

■ For the reasons stated today in *State v. Lambright,* we agree with the trial court that the aggravating circumstance set out in A.R.S. § 13–703(F)(6) was established, as the offense was committed in an especially cruel manner. The victim was made to suffer great mental anguish and physical pain prior to her death. Defendant Smith shares full responsibility for the cruelty toward Ms. Owen. In fact, he was the one who repeatedly raped the victim prior to murdering her. Cruelty was clearly established.

The evidence suggesting Smith also had a heinous and depraved attitude toward the crime is equivocal. The only evidence of a heinous and depraved attitude on the part of Smith was the uncorroborated testimony of Kathy Foreman that Smith was the per-

son who requested that the tape "We Are the Champions" be played. Although admitting much of his participation in the crime, Smith denied this. On the other hand, there is evidence that Robert Smith tried to commit suicide soon after returning to Texas, both as a result of remorse over this crime, and a marital breakup prior to the trip. We find that the evidence presented does not establish beyond a reasonable doubt that Smith had a heinous and depraved attitude toward the crime.

The principal mitigation urged by defendant was minor participation in the crime. This assertion was rejected by the trial court, and is also rejected by this court, for the reasons stated in the previous discussion regarding *Enmund v. Florida*. He further argues that the giving of a felony murder instruction in this case should be considered as mitigating. "The giving of a felony murder instruction is a mitigating circumstance only where there is some doubt as to defendant's specific intent to kill the victim. *State v. Schad*, 129 Ariz. 557, 574, 633 P.2d 366, 383 (1981), cert. denied 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 693 (1982)." *State v. Gillies*, 135 Ariz. 500, 513, 662 P.2d 1007, 1020 (1983). *Accord State v. Zaragoza*, 135 Ariz. 63, 70, 659 P.2d 22, 29 (1983). This asserted mitigation therefore does not apply to this defendant.

There was some testimony from family members that the defendant had polio as a small child which may have caused him some physical and brain damage, although the statutory mitigating circumstance of A.R.S. § 13–703(G)(1), substantial impairment of mental capability to appreciate wrongfulness of conduct or to conform conduct to the law, was not established in this case. The court does take notice that the defendant has a low intelligence; the last time his I.Q. was tested before he left school it measured seventy one, or approximately at the second percentile. Some of the testimony also suggested a troubled home life as a youth, and learning difficulties in school.

The court has also considered his lack of prior record of serious crime, the evidence suggesting remorse by defendant, his favorable adjustment to a new marital and parental responsibility in the months preceeding his arrest, and the treatment accorded Kathy Foreman as further mitigation.

Having considered all the mitigation presented, we find that although it is significant, it is not sufficiently substantial to call for leniency in light of the extreme cruelty and brutality of the instant crime. The death penalty was properly imposed in this case.

## XVI. PROPORTIONALITY REVIEW

In cases where the death penalty is imposed we also conduct a proportionality review to determine "whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendants." *State v. Richmond*, supra, 114 Ariz. at 196, 560 P.2d at 51.

For the reasons stated in *State v. Lambright*, we find that the disposition accorded Kathy Foreman, although disturbing, is not alone sufficient to require reversal of defendant's sentence.

This court must also look to the disposition of persons involved in other similar crimes. For the reasons stated in *State v. Lambright*, we find the disposition in this case to be proportional to the disposition of the following similar cases in which the death penalty was imposed, *State v. Jeffers*, 135 Ariz. 404, 661 P.2d 1105 (1983); *State v. Bishop*, 127 Ariz. 531, 622 P.2d 478 (1980); *State v. Ceja*, 126 Ariz. 35, 612 P.2d 491 (1980); *State v. Knapp*, 114 Ariz. 531, 562 P.2d 704 (1977), cert. denied 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); and not inconsistent with the following cases in which leniency was granted, *State v. McDaniel*, 136 Ariz. 188, 665 P.2d 70 (1983); *State v. Graham*, 135 Ariz. 209, 660 P.2d 460 (1983); *State v. Valencia*, 132 Ariz. 248, 645 P.2d 239 (1982); *State v. Watson*, 129 Ariz. 60, 628 P.2d 943 (1981); *State v. Brookover*, 124 Ariz. 38, 601 P.2d 1322 (1979). Again, we believe that overall the penalty imposed in this case is proportional to the penalty imposed in similar crimes.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035, and find none.

The convictions and sentences are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS, J., concur.

FELDMAN, Justice, concurring in part; dissenting in part.

I concur in the portion of the opinion affirming the conviction. My views on the use of dual juries are contained in my concurrence to *State v. Lambright,* 138 Ariz. 63, 673 P.2d 1 (1983).

I dissent from that portion of the opinion affirming defendant's sentence to death. The trial court found that Smith was a participant in the killing. However, the record indicates and the majority acknowledges that it was Lambright who used the knife and it was Lambright who "finished off" the victim by hitting her over the head with a rock. Smith claims that his participation in the act of murder was only minor and that the killing was done by Lambright and Kathy Foreman.

The trial court's findings are contrary to Smith's contentions. The trial court found beyond reasonable doubt that Smith, with premeditation, participated in the killing, that he helped to plan it, and that his participation in the actual act of murder "was MAJOR." (Emphasis in original.) Ordinarily, if the trial judge's findings are supported by the evidence we could affirm or, in a capital case where we are making an independent review, we could agree. I cannot agree in this case. On this record, the trial court's findings are necessarily based upon the testimony of Kathy Foreman. Evidently the trial judge believed her testimony. He certainly had a better opportunity than I to determine the credibility. It may well be that she told the truth. However, her motives for lying are clear. By testifying that both Lambright and Smith planned and took a major part in the crime, she has seen to their conviction and to the imposition of the ultimate sentence. By doing this, she has earned immunity for herself, avoided the death penalty, and has not served even a day in jail.

The trial judge and the members of this court are "disturbed" and "appalled" by the treatment afforded Ms. Foreman. I join them in this. I am also appalled, however, by the fact that in the face of the many mitigating circumstances detailed by the court, including his low I.Q., Smith has been sentenced to death on the uncorroborated testimony of a witness whose motive for lying is patent. If the testimony given by Kathy Foreman is true, then Smith merits the death penalty. If, however, Kathy Foreman did not tell the truth, Smith does not merit the death penalty. No member of the majority has ever seen Kathy Foreman, but each member of the majority recognizes her motive to lie and each member of the majority is appalled. In my view, no decision on life or death should be allowed to stand on so fragile a foundation. For this reason, I believe that the court should exercise its discretion in performing its duty of independent review by reducing Smith's sentence to life without possibility of parole for 25 years.