579 P.2d 1101

**STATE of Arizona, Appellee,**

v.

**Cynthia Maria DENNY, Appellant.**

**No. 4145.**

Supreme Court of Arizona,
En Banc.

June 1, 1978.

Bruce E. Babbitt, Former Atty. Gen., John A. LaSota, Jr., Atty. Gen. by William J. Schafer, III, and Georgia B. Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

Charles Anthony Shaw, Prescott, for appellant.

HAYS, Justice.

After a jury trial, appellant Cynthia Maria Denny was convicted of involuntary manslaughter for the September 28, 1974 shooting death of her husband, Gary Denny. This is the second appeal in the case; the conviction and sentence resulting from the first trial were overturned by the Court of Appeals in *State v. Denny*, 27 Ariz.App. 354, 555 P.2d 111 (1976).

After the second conviction, appellant was sentenced to three to five years in the Arizona State Prison. Appeal was taken to the Court of Appeals, and the Supreme Court has jurisdiction pursuant to 17A A.R.S. Rules of Supreme Court, rule 47(e).

Appellant had been married to Gary Denny for approximately nine months at the time of the homicide. The marriage was apparently quite stormy. Appellant testified that she and her husband argued frequently and that he beat her at least two or three times a month. She indicated that the beatings were very brutal; during some beatings she thought her husband was going to kill her. Other witnesses said they had either seen or heard some of the beatings and heated arguments; the statements of such witnesses corroborated some of the details of appellant's descriptions of the

beatings. Appellant's next-door neighbor told the jury that on several occasions Mrs. Denny had sought refuge from the beatings at the neighbor's home. Additional witnesses stated that they had seen appellant when she had black eyes, bruises, fingernail scratches on her throat, or when her face looked as if it had gone through a meat grinder. These injuries were observed after appellant married Gary Denny. Appellant said she did not seek medical help after the beatings because she knew it would upset her husband if she told anyone about the beatings and she feared upsetting him.

Considerable evidence was introduced to show that the deceased, Gary Denny, had a bad reputation for violence and turbulence. Also placed in evidence was a conviction for battery by Gary Denny upon his elderly, blind father; this battery occurred just a few months before Gary Denny was killed by his wife.

Appellant testified that she believed her husband to be mentally disturbed, that he was nervous and irritable all the time, got upset over everything, and that his behavior was getting much worse in the weeks just before she shot him.

On the evening of the shooting, appellant and her husband got into an argument in a tavern in Prescott and left for their mobile home in their Chevrolet Blazer. Appellant said that at this time her husband was yelling, shaking, and seemed completely out of control over a minor matter; this was the way he always acted before he beat her. She stated that she attempted to leave the vehicle at a stoplight, but her husband became more enraged, grabbed her arm and prevented her leaving for the remainder of the drive home. On the way home her husband yelled words to the effect that when this was over, she was going to need help. Appellant understood this to mean that he was planning to beat her again.

Upon reaching their mobile home, appellant testified that her husband shoved her out of the Blazer saying that he would return in the morning to get his things. Appellant then went into the mobile home crying and fearful. She told the jury that she decided to commit suicide by using a shotgun. As she was loading the shotgun, her husband returned. She stated that she set the shotgun down in a corner, her husband entered the home, made threatening statements to her and approached like he was ready to come at her for another beating. Appellant testified that she picked up the shotgun and aimed to the left of her husband intending to scare him away from her. After she fired the gun, her husband fell out of the door of the trailer onto the ground. She assumed she had shot him in the arm because she saw him grab his arm. She ran past him and he grabbed at her foot. She thought he could still get up and chase her, so she ran on down the road. When she realized that he was not following her, she returned home thinking he might need some help. She then discovered that he had an abdominal wound and she became very upset and called the police for help. Officers and neighbors found her in a hysterical state on the ground outside the mobile home, cradling her husband's head in her lap. Gary Denny died shortly thereafter.

Appellant charges that the jury was not properly instructed on the defendant's burden of proof on the defense of self-defense. We have reviewed the jury instructions, and we note that the jury was carefully and accurately instructed. However, we do not believe that the instructions adequately informed the jury of the defendant's burden of proof regarding the claim of self-defense. *See State v. Garcia*, 114 Ariz. 317, 560 P.2d 1224 (1977). In *Garcia, supra,* we held that the conviction must be reversed because the jury was not clearly informed that the defendant's burden of proof on the self-defense issue only required him to raise in the minds of the jury a reasonable doubt about whether his action was justifiable.

Although the trial court instructed the jury that the burden of proving the defendant guilty beyond a reasonable doubt is upon the state and that this burden never shifts during the trial, an instruction should have been given to make it clear to the jury that the defendant did not have to prove

she acted in self-defense, but that she merely had to raise a reasonable doubt that she was justified in shooting her husband. *See Garcia, supra.*

■ "The very purpose of a jury charge is to flag the jurors' attention to concepts that must not be misunderstood, such as reasonable doubt and burden of proof." *Lakeside v. Oregon,* 435 U.S. 333, 340, 98 S.Ct. 1091, 1095, 55 L.Ed.2d 319 (1978). It is vital that the jury not misunderstand the concept of the defendant's burden of proof on self-defense; the jury must be instructed with great care to prevent the misunderstanding of this concept.

■ Appellant requested an instruction on the issue of self-defense which was refused. For the reasons stated above, we conclude that it was reversible error for the trial court to fail to give an instruction which informed the jury as to the burden of proof on the self-defense issue.

Appellant urges that the frequent interruptions and objections of the prosecutor during the defendant's final argument denied her a fair trial. The prosecutor did interrupt defense counsel's final argument approximately twelve times with objections.

■ Except for fundamental error, *State v. Goldsmith,* 112 Ariz. 399, 542 P.2d 1098 (1975), opposing counsel must timely object to any erroneous or improper statements made during closing argument or waive his right to the objection. *State v. Adair,* 106 Ariz. 58, 470 P.2d 671 (1970). The purpose of the timely objection rule is to allow the court to correct the error promptly. *State v. Stout,* 5 Ariz.App. 271, 425 P.2d 582 (1967); *State v. Adair, supra.* Thus, it was necessary for the prosecutor to interrupt the defense's final argument in order to make timely objections.

■ Convictions will be overturned for prosecutorial misconduct when the prosecutor's behavior has caused the accused to have an unfair trial. *State v. Moore,* 108 Ariz. 215, 495 P.2d 445 (1972). We do not believe that the prosecutor's interruptions and objections during the closing argument resulted in an unfair trial. However, we are concerned with some of the phrasing of the prosecutor's objections which seem to impugn the integrity of defense counsel and suggest to the jury that defense counsel is being deceitful.

■ The jury in this case reported after several hours deliberation that they couldn't reach a verdict. The judge asked them to try again in the morning when they were rested. In the morning they returned a verdict of guilty of involuntary manslaughter. When the question of guilt is as close as it appeared to the jury in this case, the prosecutor's statements seeming to accuse the defense counsel of impropriety could easily prejudice the jury against the defendant. We caution the prosecutor to refrain from making similar remarks when the case is retried, or to make the remarks at the bench rather than before the jury.

Reversed and remanded for new trial.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.