599 P.2d 821

The STATE of Arizona, Appellee,

v.

Mitchell Edgar DARBY, Appellant.

No. 2 CA–CR 1505–2.

Court of Appeals of Arizona, Division 2.

June 7, 1979.

Rehearings Denied July 18, 1979.

Reviews Denied Sept. 6, 1979.

Robert K. Corbin, Atty. Gen., by William J. Schafer, III, and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Charles L. Weninger, Tucson, for appellant.

HOWARD, Judge.

The main issue in this case is whether that portion of an admission against penal interest by an accomplice that implicated the defendant was admissible in defendant's trial as an exception to the hearsay rule. We hold that it was not and reverse.

On December 15, 1977, David Miller, a salesman and departmental manager at the Woolco Department Store located on East Broadway in Tucson, Arizona, observed a male and female, both black, in the area where he was showing television games. The female, later identified as 15-year-old Beverly Thomas, took a television game and placed it in her shopping cart. Within

seconds, the defendant, who was about two shopping cart lengths behind Miss Thomas, picked up the same type of game and placed it in his shopping cart. Since it appeared to Mr. Miller that the two were together, he thought the defendant perhaps did not notice that Miss Thomas had already picked up the same game. He asked the defendant if they were together and the defendant said no. Mr. Miller thought something "funny" was going on and when the two left his area, he called Mr. Moseman, the assistant general manager responsible for security, and Mr. Morris, the checkout supervisor, and gave them a description of the pair.

About 15 to 20 minutes later, Mr. Morris saw the defendant at the front checkout paying for some items. Miss Thomas was not with him. Mr. Morris helped bag the items, which included a television game, a skillet set and a set of pots and pans. Mr. Morris secretly placed an X on the television game price tag. Defendant's receipt used one code number for the housewares and another for the television game.

After the defendant was given the receipt and the items were bagged, he stated that he had forgotten something and asked the cashier to watch his purchases until he returned. He went back into the store area and returned with some lightbulbs which he paid for. He then left the store with his purchases.

After defendant left the store, Miss Thomas appeared at the customer service desk with a receipt, a television game, a skillet set and a set of pots and pans. She showed the clerk the receipt and requested a cash refund. The clerk called Mr. Moseman to authorize the refund. He asked Miss Thomas for identification. When she was unable to produce any, she left the customer service desk to get her "husband" who did have identification. Miss Thomas returned with the defendant. He told Mr. Moseman he wanted a refund because he decided to buy a suit instead, but since they had no suits in his size he wanted his money bank. Mr. Moseman authorized the refund, the clerk gave the money to Miss Thomas and the couple departed.

Mr. Moseman followed the pair out of the store. They went into a Walgreen's drugstore and stood by the window for about 10 minutes. They then headed towards the parking lot in a "slow run". After arriving at an automobile Miss Thomas entered the driver's side and defendant entered the front passenger side. Mr. Moseman went to the driver's side and prevented Miss Thomas from closing the door and driving off. The police were then called.

When Officer Miranda and other police officers arrived at the parking lot, they spoke to Mr. Moseman, who told them what had happened. After Miss Thomas was advised of her *Miranda* rights she made three different statements to the police. She first told them that she knew nothing of the incident and there was nothing in the trunk of the car. After defendant was placed under arrest, she told them that she and the defendant had planned to go into the store and commit the fraud. She later recanted and stated that the whole scheme was her idea and offered to pay for the items.

The trunk of the car was eventually opened and the television game with a price tag marked with an X was found, together with the other items the defendant had paid for at the checkout stand. Miss Thomas was searched by the police but no money was found in her possession. Defendant was searched and cash amounting to $156.06 was found on his person. The total refund Miss Thomas had received from Woolco was $115.41.

Miss Thomas was turned over to juvenile authorities and subsequently adjudicated a delinquent minor because of her involvement in the instant offenses. A few months after the incident, she married the defendant.

The jury convicted the defendant of burglary and obtaining money by fraudulent scheme or artifice (A.R.S. Sec. 13–320.01).

When it became clear to the trial court that Miss Thomas (Darby) would invoke the spousal privilege pursuant to A.R.S. Sec.

13–1802, it permitted the state to introduce into evidence through the police officers, over defendant's objection, all her statements to them as a hearsay exception under Rule 804(b)(3), Arizona Rules of Evidence. The rule states that if the declarant is unavailable as a witness the following is not excluded by the hearsay rule:

> "A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true."

California and Arizona are two of the few American jurisdictions which, together with the federal courts [1], recognize evidence of declarations against penal interest as an exception to the hearsay rule. The California Supreme Court addressed the very issue with which we are concerned here in the case of *People v. Leach*, 15 Cal.3d 419, 124 Cal.Rptr. 752, 541 P.2d 296 (1975), cert. den. 424 U.S. 926, 96 S.Ct. 1137, 47 L.Ed.2d 335. It held that the exception to the hearsay rule relating to evidence of declarations against interest set forth in Cal.Evid.Code Sec. 1230, which is similar to our rule, is inapplicable to evidence of all or part of a statement not in itself specifically disserving to the interest of the declarant.

The California court observed that both Professor Wigmore and Professor Morgan, whose handiwork is the model code of evidence, support admission of hearsay evidence of declarations incriminating defendants as well as declarants. See 5 Wigmore, Evidence Sec. 1465 (Chadbourne Rev.1974) and Model Code of Evidence rule 509(2) (1942). Their theory is that the entire statement should be admissible because declarations against interest show the declarant's trustworthy frame of mind. This conception has been attacked by modern legal scholars. Davenport, "The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions: A Functional Analysis," 85 Harv.L.Rev. 1378, 1396–98 (1972);

Jefferson, "Declarations Against Interest: An Exception to the Hearsay Rule," 58 Harv.L.Rev. 1, 59 (1944); Note, "Preserving the Right to Confrontation—A New Approach to Hearsay Evidence in Criminal Trials," 113 U.Pa.L.Rev. 741, 755–56 (1965); Comment, "The Hearsay Exception for Co-Conspirators' Declarations," 25 U.Chi.L. Rev. 530–40 (1958). As observed by Jefferson, supra, the basis of the exception is not that a declarant is in a generally trustworthy frame of mind. The probability of trustworthiness comes from the facts asserted being disserving in character. Once those facts are left behind, the probability of trustworthiness for other statements seem highly speculative and conjectural. Furthermore, the exception would get around the familiar doctrine that the confession of a defendant is not admissible against his co-defendant. Such a result is highly questionable.

■ We agree with the California court's treatment of this issue and with its final comment on the matter:

> "We agree with the cogent comment that '[a]lthough it seems reasonable that no man would state a fact which might cause him to suffer financial loss or imprisonment,' it is precisely the purpose of the Constitution—and, we might add, the hearsay rule—to 'protect defendants from statements of unreasonable men if there is to be no opportunity for cross-examination.' To paraphrase another commentator, it is no victory for common sense to make a belief that unreasonable men are notorious for their veracity the basis for law." (citations omitted) 124 Cal.Rptr. at 767, 541 P.2d at 311.

That portion of Miss Thomas' statement implicating the defendant was not admissible against the defendant as a declaration against penal interest.

The state has two other theories which it contends justify the admission of Miss Thomas' statements, if they are not admissible as a declaration against penal interest. It contends that they were admissible under

---

1. See Fed.R.Evid. 804(b)(3).

Rule 801(d)(2)(E), which provides that a statement by a co-conspirator made during the course and in furtherance of the conspiracy is not hearsay.

■ A conspiracy usually comes to an end when the substantive crime for which the co-conspirators are being tried is either attained or defeated. *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); *People v. Leach*, supra. Conspiracies are not deemed to be still operative merely because the conspirators act in concert to avoid detection and punishment. *Krulewitch v. United States*, supra. There may be circumstances, however, which show that the objective of the conspiracy was to do more than just commit the substantive crime. See *People v. Saling*, 7 Cal.3d 844, 103 Cal.Rptr. 698, 500 P.2d 610 (1972), a conspiracy not only to commit murder, but also to effectuate a transfer of money; see also, *Atkins v. United States*, 307 F.2d 937 (9th Cir. 1962), a conspiracy not only to rob a bank, but also to conceal the fruits of the crime until they had been disposed of.

■ When the defendant and Miss Thomas were detained by Mr. Moseman, the conspiracy was still in existence. The object of the conspiracy, securing of money by a fraudulent scheme, had not yet been attained, since they had not yet successfully left the area with the money. However, the conspiracy clearly was defeated and came to an end when Mr. Darby was arrested. Furthermore, it can hardly be said under the circumstances here that Miss Thomas' statement incriminating the defendant was in furtherance and during the course of the conspiracy. Under such circumstances a statement made to the police by a conspirator, whether inculpatory or exculpatory as to the declarant, which incriminates the other conspirator as a party to the crime, constitutes a termination of the conspiracy and is not made during the pendency of the criminal project. *Crowder v. State*, 237 Ga. 141, 227 S.E.2d 230 (1976).

The state's third theory of admissibility is that inculpatory statements made in the presence of an accused by a co-conspirator which are not denied or contradicted by the accused are admissible in a criminal trial against him as an admission against interest. We need not discuss the merits of this theory since the record shows that Miss Thomas' statements were not made in the presence of the defendant.

The defendant also contends the trial court erred in other respects. He was charged with violating A.R.S. Sec. 13–320.-01:

"Any person who, pursuant to a scheme or artifice to defraud, knowingly and intentionally obtains or attempts to obtain money, property or any other thing of value by means of false or fraudulent pretenses, representations or promises is guilty of a felony . . . ."

■ The defendant contends the trial court erred when it instructed the jury as to the definition of theft by false pretenses, instructed them as to whether certain defenses to the crime of theft by false pretenses were available and further told them the intent necessary to convict one of such an offense. He correctly points out that he was not charged with theft by false pretenses under A.R.S. Sec. 13–661(A)(3) and the trial court erred in giving these instructions.

■ Defendant contends that the court erred in denying his motion for a directed verdict of acquittal because the evidence showed that he violated A.R.S. Sec. 13–312, obtaining money by a confidence game, or A.R.S. Sec. 13–661(A)(3), theft by false pretenses. We do not agree. The trial court may direct a verdict of acquittal only where there is no substantial evidence to warrant a conviction. Rule 20(a), Rules of Criminal Procedure, 17 A.R.S.; *State v. Ortiz*, 115 Ariz. 43, 563 P.2d 298 (App.1977). Here, the state introduced substantial evidence of obtaining property by fraudulent scheme or artifice in violation of A.R.S. Sec. 13–320.-01.[2]

2. Defendant could not have been convicted of obtaining money by a confidence game since there was no evidence that he had gained the

confidence of the victim. *State v. Carr*, 112 Ariz. 453, 543 P.2d 441 (1975).

Defendant contends his conviction must be vacated and the charges dismissed because the charge of obtaining property by fraud, in Arizona, is vague and therefore violates the due process clause of the Fourteenth Amendment to the United States Constitution. This argument is based upon the assertion that A.R.S. Sec. 13–312, obtaining money by a confidence game, A.R.S. Sec. 13–661(A)(3), theft by false pretenses, and A.R.S. Sec. 13–320.01, theft by fraudulent scheme or artifice, have overlapping elements and that a person could be convicted under more than one of these statutes. Since the possible punishment under these statutes vary, defendant argues that a person of average intelligence cannot determine what punishment he will be subjected to if he obtains someone's property by means of fraud.

 This novel argument misses the mark. All that is required for a statute to pass constitutional muster against a vagueness attack is that the offense be defined in terms that men of average intelligence can understand and that it give sufficient warning so that men may conform their conduct to its dictates. In *State v. Stewart*, 118 Ariz. 281, 576 P.2d 140 (App.1978), we held that A.R.S. Sec. 13–320.01 was not impermissibly vague.

Defendant's final contention is that his prosecution and conviction under A.R.S. Sec. 13–320.01 denied him equal protection since the prescribed penalty is more severe than under A.R.S. Sec. 13–661(A)(3) or 13–312. It has been held in Arizona that where there is no conflict between two statutes, a criminal offense may be prosecuted under either if the facts are such that they fall within the prohibition of both. *State v. Culver*, 103 Ariz. 505, 446 P.2d 234 (1968); *State v. Ulmer*, 21 Ariz.App. 378, 519 P.2d 867 (1974); *Sykes v. State ex rel. Williams*, 18 Ariz.App. 588, 504 P.2d 529 (1972). However, in none of these cases has the issue of equal protection been raised.

Other state courts faced with this problem have held that where there are two statutes with unequal penalties proscribing the same conduct a defendant convicted under the harsher statute is denied equal protection of the law. *People v. Favors*, 556 P.2d 72 (Colo.1976); *People v. Palumbo*, 555 P.2d 521 (Colo.1976); *State v. Modica*, 58 Haw. 249, 567 P.2d 420 (1977); *State v. Witt*, 310 Minn. 211, 245 N.W.2d 612 (1976). To be a denial of equal protection, however, it must appear that the elements of proof essential to conviction under either statute are exactly the same. *State v. Modica*, supra. Comparing A.R.S. Sec. 13–320.01 with A.R.S. Sec. 13–312, it is clear that the elements of proof are not exactly the same. A.R.S. Sec. 13–312 requires that the victim's confidence first be secured. This is not required under A.R.S. Sec. 13–320.01. It requires a scheme or artifice to defraud. This element is not required in A.R.S. Sec. 13–661(A)(3), which only requires a knowing and deliberate false or fraudulent representation or pretense. Thus, the elements of proof are not exactly the same and defendant's right to due process and equal protection would not be violated by a conviction under A.R.S. Sec. 13–320.01.

Reversed and remanded for new trial.

RICHMOND, C. J., and HATHAWAY, J., concur.