650 P.2d 1198

**STATE of Arizona, Appellee,**

v.

**Kenneth Wayne CANNON, Appellant.**

No. 5382.

Supreme Court of Arizona,
In Banc.

June 23, 1982.

Rehearing Denied Sept. 14, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Bruce M. Preston, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Justice.

On 2 July 1981, Kenneth Cannon was convicted of first degree murder pursuant to A.R.S. § 13–1105 and subsequently sentenced to life imprisonment with no possibility of parole for 25 years pursuant to A.R.S. § 13–703. We have jurisdiction of this appeal pursuant to A.R.S. §§ 13–4031 and 13–4033.

Defendant raises the following issues on appeal:

1. Did the trial court err in refusing to grant a new trial for prosecutorial misconduct?

2. Were the jury instructions regarding first degree murder and lesser included offenses erroneous?

3. Did the trial court err in its jury instructions on self defense?

The facts necessary for a determination of this appeal are as follows. On the evening of 23 July 1980, a party was held at a

residence in Tempe, Arizona. The party stragglers were still at the residence at about 4:00 o'clock the next morning when Don Peters returned to find Steven Aldridge and the defendant forcing George Monsour to clean up his vomit near the front door. Once the job was completed, the group moved to the front yard, where the argument continued. Don Peters intervened and persuaded Monsour, who was still extremely intoxicated, to go home. Monsour was unarmed and dressed only in a pair of shorts. He left, on foot, and Peters went to bed. Shortly afterward, Aldridge and Cannon started out on bicycles looking for Monsour. When they caught up with him a few blocks away, the argument resumed. The evidence suggests that Monsour began to run toward Cannon. Cannon removed a revolver he had been carrying and fired a number of shots. Cannon later testified that he was afraid of Monsour because Monsour had beaten him up on previous occasions and because he believed Monsour knew karate. He stated that he had not intended to kill Monsour, but had shot at his legs to stop him from running toward him. Monsour fell, then crawled off to a nearby yard. He was pronounced dead on arrival at the hospital. Monsour suffered 3 gunshot wounds, to the left chest, back and lower abdomen, and elbow. The pathologist who conducted the autopsy testified at trial that two of the shots were fatal. The wound in the chest was located 19 inches below the top of the victim's head and just to the left of the central midline. The wound in the back entered the middle of the back and traveled downwards through the body and lodged just below the left hipbone. The victim's blood alcohol level upon arrival at the hospital was .28 grams per hundred milliliters. Defendant claimed self defense and lack of intent to kill. From a jury verdict and judgment of guilt, defendant appeals.

## PROSECUTORIAL MISCONDUCT

At the time the gun was seized and tested, it could not be fired in single action mode, that is, by cocking the hammer and pulling the trigger. It would fire only in double action mode, in other words, by simply pulling the trigger. By the time of trial, the trigger had become broken and tended to jam. The prosecutor discovered this defect while testing the mechanism of the gun during a recess in the trial, but did not inform the defense. When the defendant took the stand, the prosecutor cross examined the defendant in regard to the gun:

"Q Now can you tell me with bangs, how fast the bangs went?

"A I don't know, just bang, bang, it misfired a couple of times and it went bang—I don't know.

"Q How were you firing the gun, double or single action?

"A What do you mean?

"Q Well, were you cocking it and pulling the trigger or just pulling the trigger?

"A Just pulling the trigger.

"Q Take a look at the gun; go ahead and pull the trigger five or six times.

"A It's stuck.

"Q You have to pull the trigger out, then pull it again, don't you? Was the gun doing that that night?

"A No, sir.

"Q Do you remember testifying about cocking the gun? Could you cock the gun that night?

"A What do you mean, 'Could you cock it'?

"Q Could you pull the hammer back this night when you were standing outside the residence?

"A If you pull it back just like you did, I guess so.

"Q Your testimony is the gun is not working now the way it did that night? On that night, you could crank off, 'boom, boom, boom' as fast as you could pull it. This would bob right in turn?

"A I shot them off, I know that.

"Q Did you have any problems with the trigger sticking?

"A No.

"Q It never would stick back there like that?

"A No, sir."

When defense counsel discovered the trigger had been broken, he moved, in chambers, for a mistrial on the basis that the prosecutor had failed to disclose the changed condition of the gun and had tried to impeach the defendant with the deceptive, changed evidence. The motion for a mistrial was denied. To rehabilitate the defendant, the defense called Kenneth Kowalski, the criminalist who originally tested the weapon. He testified:

"BY MR. STEINER:

"Q At the time you previously testified when the prosecutor asked you to come forward, was the gun operating in the same manner that it had when you tested it?

"A Yes, I believe so.

"Q Is it operating in the same fashion today?

"A No."

The same witness indicated that the gun was old and worn and could have been broken by someone merely pulling the trigger. Defense counsel renewed the motion for a mistrial, which was denied. The defense then called Detective Palmer who had seized and examined the gun. He testified:

"Q There is no question that this gun, were the jury to examine it right now, does not operate the way it did when you recovered it in the Cannon residence?

"A It does not operate in the same manner as it did."

The defendant now urges that the prosecutor's misconduct in failing to disclose the change and impeaching the defendant on the condition of the gun is grounds for a new trial.

It was improper for the prosecutor to cross examine the defendant on the working of the gun without first disclosing the change in the gun to the defense. Evidence of the operation of the gun was relevant to a determination of the facts at issue. The gun's capacity to fire quick, successive shots was a consideration concerning premeditation. The prosecution had a duty to disclose the change in the gun's condition to the defense. Rule 15.6, Arizona Rules of Criminal Procedure, 17 A.R.S.; Rule 29(a), Rules of the Supreme Court, 17A A.R.S.; American Bar Association Code of Professional Responsibility, DR 7–102(A)(3) & (4), 7–103(B), and EC 7–13 & 7–25.

We need not reverse, however. The fact that the gun had been broken after the arrest was brought to the jury's attention. After the defendant's statement, the criminalist and Detective Palmer were both questioned as to the changed condition of the gun. The testimony left no question that the gun did not operate as it had on the night of the killing. While we do not condone the prosecutor's failure to disclose the changed condition of the gun or his cross examination of the defendant, we do not believe the defendant has been prejudiced. "Misconduct alone will not cause a reversal, as a new trial should not be granted to punish counsel." *State v. Ramirez,* 116 Ariz. 259, 265, 569 P.2d 201, 207 (1977). We find no error. *State v. Madsen,* 125 Ariz. 346, 609 P.2d 1046 (1980); Rule 15.7, Arizona Rules of Criminal Procedure, 17 A.R.S.

## WERE THE JURY INSTRUCTIONS REGARDING FIRST DEGREE MURDER AND LESSER INCLUDED OFFENSES ERROR?

The jury was instructed on the elements of first degree murder, second degree murder, and manslaughter. Noting that reckless conduct is part of the element of intent for either manslaughter or second degree murder and could serve to reduce first degree murder to these lesser included offenses, defendant urges that the trial judge improperly excluded instructions on recklessness. Further, he urges that the instructions are internally inconsistent regarding the intent required for a finding of guilt. Defendant concludes that the confusing instructions and the absence of instructions on recklessness constitute reversible error.

We do not believe that the record supports a finding of recklessness. The record shows that the defendant, armed with a gun, went in search of the victim, who was already on his way home. When defendant caught up with him, an argument ensued, and the victim allegedly ran toward the defendant. Defendant testified that he shot the victim in self defense.

"Recklessly" is defined by statute:

" 'Recklessly' means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware of such risk solely by reason of voluntary intoxication also acts recklessly with respect to such risk." A.R.S. § 13–105(5)(c).

The defendant in the instant case did more than disregard a "substantial and unjustifiable risk." Defendant's own testimony indicates that he intentionally shot his victim. Although defendant testified that he intended to hit the victim's legs, we do not believe that this would reduce his conduct to recklessness, as the shooting itself was still intentional. Defendant was not entitled to a reckless instruction. *State v. Dalglish*, 131 Ariz. 133, 639 P.2d 323 (1982).

The trial court included the element of intent as to each offense. The instructions taken as a whole were proper under the facts. See *State v. Rhymes*, 129 Ariz. 56, 628 P.2d 939 (1981). We do not believe that they were confusing or internally inconsistent as defendant contends. We would note, however, that even if they were, that would not necessarily be error as long as the jury was instructed as to each and every offense reasonably supported by the evidence. *State v. Ramos*, 108 Ariz. 36, 492 P.2d 697 (1972). Because facts are often conflicting, instructions will also often be inconsistent, if not conflicting. Insofar as they are not unduly confusing, the fact that the instructions appear inconsistent will not be considered as grounds for error. We find no error.

## DID THE TRIAL COURT ERR IN ITS INSTRUCTIONS ON SELF DEFENSE?

The court instructed the jury as to self defense stating:

"A person is justified in threatening or using physical force against another when and to the extent a reasonable person would believe that physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful physical force."

The defendant urges that this instruction on self defense was inadequate and deprived him of the right to have his version of the incident considered by the jury. He contends the jury should have been instructed that "actual danger is not necessary to justify the use of physical force in self defense. It is enough if a reasonable person in defendant's situation would have believed that he was in immediate physical danger."

The instruction requested by defendant on the matter of self defense was adequately covered by the instructions actually given. The defendant is not entitled to his instruction if another instruction adequately covers the same theory. The jury in the instant case was accurately instructed on the law of self defense. The jury was told that his actions were justified if a "reasonable man" would have believed that force was necessary under the circumstances. We believe that that is sufficient. *State v. Pickett*, 121 Ariz. 142, 589 P.2d 16 (1978); *State v. Rhymes*, supra. We find no error.

Affirmed.

HOLOHAN, C. J., GORDON, V. C. J., and HAYS and FELDMAN, JJ., concur.