657 P.2d 899

The STATE of Arizona, Appellee,

v.

Frank Elario PALOMAREZ, Appellant.

2 CA–CR 2453.

Court of Appeals of Arizona, Division 2.

Oct. 5, 1982.

Rehearing Denied Nov. 17, 1982.

Review Denied Dec. 21, 1982.

---

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

George Haskell Curtis, Tucson, for appellant.

## OPINION

HATHAWAY, Judge.

The appellant, Frank Palomarez, was arrested in Delano, California for the murder of John Bracamonte. The victim's van was also discovered in Delano. Charged with first degree murder, kidnapping and robbery, the appellant was found guilty at a jury trial of second degree murder and unlawful imprisonment. He was given concurrent sentences of 14 and 1.875 years, respectively.

Evidence at trial indicated that Palomarez, the victim and a few others had been drinking beer for several hours when Palomarez, the victim and one other man left in the victim's van with Palomarez driving. Palomarez dropped off the other man and drove to a convenience store to buy some gas. A witness testified that he saw a man, later identified as the victim, run from the van with his hands tied behind him. The fleeing victim was overtaken by Palomarez and forced back into the van. Palomarez, testifying on his own behalf at trial, claimed that he was driving the van because the victim was too drunk to drive. According to Palomarez, the victim had tried to grab the wheel away from him, making it necessary for Palomarez to restrain him by tying him up. Palomarez explained that after leaving the convenience store, the victim worked his hands loose and attacked Palomarez with a jack making it necessary for Palomarez to strike back in self-defense. When the victim collapsed unconscious, Palomarez rebound the victim's hands and then, realizing that he was dead, dumped the body in the desert. The victim's badly beaten body was later discovered in the desert, hands bound.

Appellant raises several issues on appeal, none of which merits reversal. The first issue is whether or not the statutory definitions of second degree murder, contained in A.R.S. § 13–1103(A)(1), and of manslaughter, contained in A.R.S. § 13–1104(A)(3), are unconstitutionally vague thus in violation of due process and equal protection. The portion of the manslaughter statute in question provides:

"A. A person commits manslaughter by:
1. Recklessly causing the death of another person;"

The portion of the second degree murder statute in question provides:

"A. A person commits second degree murder if without premeditation:

\* \* \* \* \* \*

3. Under circumstances manifesting extreme indifference to human life, such person recklessly engages in conduct which creates a grave risk of death and thereby causes the death of another person."

The crux of Palomarez' argument is that the statutory definitions of these crimes are so similar that a jury would be incapable of making a distinction between the two. This argument has been recently addressed and rejected in *State v. Walton*, 133 Ariz. 282, 650 P.2d 1264 (1982), where the constitutionality of A.R.S. § 13–1103(A)(1) and A.R.S. § 13–1103(A)(3) was upheld. Appellant does not suggest that he did not know it was unlawful for him to kill Bracamonte by beating, kicking or strangling him. He claims no confusion between criminal and non-criminal conduct and will not be heard to argue that others in different circumstances may find vagueness in the statute. *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). His contention that there is no real difference between the statutes has been answered in *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *State v. Weiner*, 126 Ariz. 454, 616 P.2d 914 (App.1980); *State v. Darby*, 123 Ariz. 368, 599 P.2d 821 (App. 1979). Appellant's equal protection argument that he is being subjected to harsher treatment than one who does the same thing but is convicted only of manslaughter is answered against him in *Batchelder* and *Weiner*.

■ The second issue raised in this appeal is whether or not the defendant is entitled to have the jury instructed that Arizona does not require retreat before self-defense may be lawfully used. Palomarez contends that *State v. Jackson*, 94 Ariz. 117, 382 P.2d 229 (1963), controls this issue and stands for the proposition that when a defendant claims self-defense, the jury should have been instructed that a person who is in a place where he has a right to be is not required to retreat but may defend himself

with deadly force in order to avoid great bodily harm. Although, as appellant states, the law in Arizona does not require retreat in this situation, we find the instructions the jury actually received on this point, essentially patterned after RAJI 4.04 which is in turn based on A.R.S. § 13–404 and § 13–405, to be adequate. They provide:

"The defendant was justified in using or threatening physical force in self defense, if the following two conditions existed: Number one; a reasonable person in the defendant's situation would have believed that physical force was immediately necessary to protect against another's use or attempted use of physical force; and, number two, the defendant used or threatened no more physical force than would have appeared necessary to a reasonable person.

However, a person may use deadly physical force in self defense only to protect himself from another's use of deadly physical force.

Self defense justifies the use or threat of physical force only while the apparent danger continues. The right to use physical force in self defense ends when the apparent danger ends.

Actual danger is not necessary to justify the use of physical force in self defense. It is enough if a reasonable person in the defendant's situation would have believed that he was in immediate physical danger."

This issue recently has been confronted by Arizona courts in *State v. Jessen*, 130 Ariz. 1, 633 P.2d 410 (1981); *State v. Cannon*, 133 Ariz. 216, 650 P.2d 1198 (1982); *State v. Ross*, 130 Ariz. 33, 633 P.2d 442 (App.1981). In *Jessen*, the defendant was convicted of first degree murder for shooting the victim after going to his office to resolve a pay dispute. The defendant claimed he shot the victim in self-defense and appealed on the grounds that according to *State v. Jackson*, supra, he was entitled to but did not receive a jury instruction that acting in self-defense did not impose a duty to retreat. The Arizona Supreme Court held that the jury instruction which was based on A.R.S. § 13–404 and § 13–405 did not require retreat as a legal predicate

to self-defense and thus was in accord with *State v. Jackson.*

In *Cannon,* the supreme court followed a similar line of reasoning, stating that a defendant is not entitled to his instruction if another instruction adequately covers the same theory. The court further held that the jury instructions on self-defense were sufficient where the jury was told that the defendant's actions were justified if a "reasonable man" would have believed that force was necessary under the circumstances. This view was followed by this court in *State v. Ross,* supra, where we found that the instruction given fully charged the jury on the issue of self-defense even though the jury was not explicitly instructed that self-defense imposes no duty to retreat.

■■■ Appellant raises, as his third issue, the question of whether or not the trial court erred in its refusal to take judicial notice of a prior mental health hearing in which the murder victim was adjudicated dangerous. We find no error meriting reversal.

Appellant's authority for the proposition that a trial court *may* take judicial notice of the court record in another action filed in the same court, *Schuldes v. National Surety Corp.,* 27 Ariz.App. 611, 557 P.2d 543 (1976); *State v. Astorga,* 26 Ariz.App. 260, 547 P.2d 1060 (1976), does not support his argument that under these circumstances, judicial notice is mandatory. Moreover, appellant failed to comply with the disclosure requirements of the Rules of Criminal Procedure, Rule 15.2. Further, this evidence was cumulative since the doctor who examined the victim in the mental health hearing was allowed to testify that in his opinion the victim was at the time of the examination a danger to himself and others, that he so testified at the hearing and that the victim was not discharged from the hospital until about three weeks after the hearing.

■■■ Appellant's fourth allegation of error questions whether a prosecutor may attempt to impeach the defendant concerning statements previously made by him without offering proof that he actually made the statements. Appellant contends that he was improperly impeached when

the prosecutor failed to offer evidence that Palomarez had made comments that he feared receiving a 15-year jail sentence for a crime he had previously committed and that he had asked the victim if he wanted to go to California. We find this argument does not merit reversal for several reasons. Although as Palomarez correctly contends, impeachment by insinuation is improper, the record indicates that in questioning appellant the prosecutor acted in good faith, and these matters were merely collateral to the key point the prosecutor was seeking to establish and which Palomarez admitted, namely, that Palomarez did in fact plan to go to California to avoid sentencing on his earlier burglary conviction. This is evident from the following testimony elicited from Palomarez at trial:

"Q. Now, you were due to be sentenced on another matter on June 6th, 1980, in Division Fifteen—Judge Arnold's court?

A. Yes.

Q. And you believed, in fact, that you were going to be sentenced to prison?

A. Yes.

Q. In fact, you thought that you were going to go to prison for some length of time?

A. No, I didn't.

Q. You don't recall telling anyone that you thought you were going to go to jail for fifteen years?

A. No, I don't.

Q. That was for a burglary; correct?

A. Yes, sir.

Q. Do you remember telling people that you did not want to go to prison; that you were not going to stick around for the sentencing?

A. The only one I ever recall telling was my sister.

Q. That you were going to go to California because you didn't want to get sentenced to prison?

A. I was thinking about going to California.

Q. Do you recall when you told her this?

A. No, I don't.

Q. It would have been before May 29th, though?

A. I can't remember when I told her.

Q. Was it before this incident with Johnnie?

A. Yes.

Q. Do you remember—did you ask Johnnie, that night while you were at Frank's house, if he wanted to go to California?

A. No, I do not.

Q. Did you mention it at all?

A. No."

Furthermore, even if the trial court had committed error in permitting the prosecutor to ask the objectionable questions, it would have been harmless error since the allegations contained in the questions could only be used to prove (1) that the victim's murder was premeditated, or (2) that Palomarez intended to steal the victim's van. Since Palomarez was acquitted of both first degree murder and robbery, he suffered no prejudice from the prosecutor's questions.

■ The last issue raised on this appeal is whether or not the prosecutor was improperly allowed to question a witness about prior statements the witness allegedly made without offering proof after the witness' denial.

The prosecutor questioned the witness as to whether appellant had told the witness that he had dumped the victim's body in the desert after he died of an over-dose. Because the record indicates that after some hedging, the witness testified at a hearing out of the jury's presence that Palomarez at least indirectly indicated to the witness that he had dumped the van owner's body in the desert after he had died of an overdose, the prosecutor had a factual basis for the questions and thus they were not improper. Appellant argues that this issue is controlled by *State v. Cruz*, 128 Ariz. 538, 627 P.2d 689 (1981). We disagree. *Cruz* involved testimony concerning an alleged admission made to the witness by the defendant which tended to establish his guilt. The Arizona Supreme Court held that although

an out-of-court statement is admissible to impeach a witness' credibility, it should not be admitted when it serves the dual purpose of tending to prove the defendant's guilt. However, the statement appellant allegedly made to the witness that the victim died of an overdose, tended to be exculpatory rather than inculpatory as in *Cruz*. Furthermore, Palomarez admitted in his own testimony that he dumped the body in the desert. Thus, he suffered no prejudice from the trial court allowing the prosecutor to ask these questions of the witness.

Affirmed.

HOWARD, C.J., and BIRDSALL, J., concur.