798 P.2d 1335
**STATE of Arizona, Appellee,**

v.

**Robert L. RUELAS, Appellant.**

**No. 1 CA–CR 88–685.**

Court of Appeals of Arizona,
Division 1, Department D.

Feb. 27, 1990.

Review Denied in Part and Granted in Part Oct. 5, 1990.

See also, 165 Ariz. 298, 798 P.2d 1307.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., Janet Keating, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Spencer D. Heffel, Deputy Public Defender, Phoenix, for appellant.

BROOKS, Judge.

Following a jury trial, appellant (defendant) was convicted of manslaughter, a dangerous offense, and sentenced to an aggravated term of ten years' imprisonment. On appeal, he raises the following arguments:

(1) the trial court committed fundamental error by failing to give defendant's requested instruction on negligent homicide as a lesser included offense;

(2) the trial court erred by not clearly instructing the jury regarding defendant's limited burden of proof on the issue of self-defense;

(3) the trial court erred by allowing the use of the victim's hearsay statements;

(4) the trial court erred by barring the defense from impeaching defendant's ex-girlfriend with her prior juvenile adjudication; and

(5) the trial court committed error in the selection of the alternate juror.

### FACTS

On the day in question, defendant stopped at an ex-girlfriend's home late at night, entering the home without permission. The girl's mother told defendant to leave, and although he did so, he remained outside of the house, seated on the hood of his automobile. When the victim later came out of the ex-girlfriend's home, defendant called him over to where he was sitting and began talking to him. Thereafter, a fight ensued, during which defendant stabbed the victim with a knife, causing an

eight- to ten-inch puncture wound which eventually resulted in the victim's death.

Defendant testified at trial and admitted kicking the victim after he had bent over and lifted up his pant leg. Defendant interpreted the victim's action as an attempt to obtain a knife. Defendant stated that immediately after the kicking incident, he found a knife on the ground and picked it up. He testified that as he was holding the knife, the victim continued to hit him. He then swung at the victim while holding the knife, and the victim fell to the street. Defendant admitted that the victim did not have a weapon when he was stabbed.

## INSTRUCTION ON NEGLIGENT HOMICIDE

Relying on *State v. Fisher*, 141 Ariz. 227, 686 P.2d 750 (1984), defendant first argues that the trial court erred in refusing to give an instruction on negligent homicide. He contends that the jury might have concluded that he did not *consciously disregard* the risk that he would cause the victim's death when he swung at him, but that he only failed to *perceive* that risk, in which case he could only be guilty of negligent homicide. The state argues that there was no evidence to support a jury finding that defendant was unaware that swinging a knife or stabbing the victim created a substantial and unjustifiable risk that his conduct would cause the victim's death.

■ The trial court instructed the jury on both second-degree murder and manslaughter. It is the trial court's duty to instruct on all grades of homicide that are reasonably supported by the evidence. *State v. Ramirez*, 116 Ariz. 259, 270, 569 P.2d 201, 212 (1977). In *State v. Fisher*, the court stated that negligent homicide is generally a lesser included offense of manslaughter. 141 Ariz. at 247, 686 P.2d at 770. Negligent homicide is established where a person fails to perceive a substantial and unjustifiable risk that his or her conduct will cause the death of another person. *Id.* at 248, 686 P.2d at 771. As noted in *Fisher*, the element that distinguishes *negligent* homicide from manslaughter is the actor's "awareness" of the

risk occasioned by his or her conduct. The court in *Fisher* suggested that a negligent homicide instruction should be given when a defendant presents a "credible argument" that his or her failure to perceive a risk was due to something other than "voluntary intoxication." *Id.* at 248, n. 8, 686 P.2d at 771.

■ As a general rule, a defendant is only entitled to a lesser included offense instruction if there is evidence from which the jury could convict on the lesser offense and find that the state had failed to prove an element of the greater offense. *State v. Conroy*, 131 Ariz. 528, 532, 642 P.2d 873, 877 (App.1982). Moreover, the trial court need only give a lesser included offense instruction when the element that distinguishes the two charges is in dispute. Therefore, when the evidence is such that the defendant can only be found guilty of the greater offense, there is no requirement that an instruction on a lesser included offense be given. *Id.*

■ Here, the only defense presented at trial was self-defense. From the opening statements by defense counsel to the close of the evidence, the entire tenor of the defense was that defendant had acted out of an instinct for self-preservation. In order to be entitled to an instruction on negligent homicide, the defendant must have presented some evidence that the death of the victim was caused by "criminal negligence." *See* A.R.S. § 13–1102(A). "Criminal negligence" is defined in A.R.S. section 13–105(6)(d) as follows:

> 'Criminal negligence' means, with respect to a result . . . described by a statute defining an offense, that a person fails to perceive a substantial and unjustifiable risk that the result [death] will occur. . . .

While the negligent homicide statute found in A.R.S. section 13–1102 had no predecessor statute, we note that it has an element in common with the former involuntary manslaughter statute, in that the latter also contemplated an act committed unintentionally rather than intentionally. *State v. Prewitt*, 104 Ariz. 326, 332, 452

P.2d 500, 506 (1969). In *Prewitt*, the evidence showed an intentional act, self-defense, rather than an unintentional act. The court stated that because involuntary manslaughter contemplated an act committed unintentionally, a refusal to instruct on involuntary manslaughter was not erroneous. Furthermore, in *State v. Foggy*, 101 Ariz. 459, 420 P.2d 934 (1966), the court upheld a trial judge's refusal to instruct on involuntary manslaughter where the defendant testified that he purposely shot the victim in self-defense. The court noted that the intentional use of a deadly weapon was enough to infer an intent to cause serious bodily harm to the victim. That inference, in addition to the fact that there was no evidence in the record to suggest that the defendant shot the victim other than intentionally, was found to support the trial court's refusal to grant an instruction on involuntary manslaughter. Finally, in *People v. Fink*, 194 Colo. 516, 574 P.2d 81 (1978), the court held that criminally negligent homicide was totally inconsistent with defendant's theory of self-defense. The court stated, "We find it is inherent in the affirmative defense of self-defense that the person not only reasonably believed that his actions were justified, but also that he acted in a reasonable manner." *Id.* at 518, 574 P.2d at 83. The court noted that under the criminally negligent homicide statute, the jury was required to find that the defendant failed to perceive an unjustified risk that a reasonable person would have perceived in the situation.

During arguments on the necessity of instructing on negligent homicide in the case at hand, defense counsel argued that the evidence showed that defendant was not aware that the wound had been inflicted or that he was mistaken about his "right to use the knife in defending himself." Counsel's argument appeared to rely on mistake as to the legal right to use deadly force as being sufficient to support a negligent homicide instruction. However, there was no evidence that defendant failed to perceive the risk that if he struck someone with enough force to drive a knife ten inches into his body, death could result. To the contrary, defendant's testimony un-

equivocally supported the opposite conclusion, i.e., that he was aware of the grave danger presented by the use of a knife because that danger allegedly not only prompted his attack on the victim, but also supported his continued assault on the victim to protect himself from the risk of great bodily harm. Given the complete absence of any evidence suggesting that the mental element of "awareness" of the risk was at issue, it was not error to refuse to instruct on the offense of negligent homicide.

## INSTRUCTIONS ON SELF-DEFENSE

■ Defendant next argues that by giving an instruction which was rejected in *State v. Hunter*, 142 Ariz. 88, 688 P.2d 980 (1984), the trial court improperly instructed the jury on self-defense. He contends that the court did not properly inform the jury that defendant's burden as to self-defense was limited to raising a reasonable doubt.

In *Hunter*, the court recognized the rule that the state must prove all of its case against a defendant beyond a reasonable doubt. *Id.* at 89, 688 P.2d at 981. The court also noted that when self-defense was raised, the defendant need not prove that he properly acted in self-defense, but must merely present evidence sufficient to raise a reasonable doubt as to whether his conduct was justified. Once such evidence is presented, the burden is on the state to prove beyond a reasonable doubt that the conduct was *not* justified. In *Hunter*, the court dealt with the following instruction:

> If you decide the defendant's conduct was justified, you must find the defendant not guilty.

Although the instruction was in accord with Recommended Arizona Jury Instructions Number 4.01, the defendant in *Hunter* argued that the instruction not only failed to make the state's burden of proof as to justification clear to the jury, but that it actually shifted the burden of proof to the defendant by requiring the jury to decide that the defendant's conduct was justified before acquitting him. The court held that giving the above instruction constitut-

ed fundamental error in that case, because the instructions *as a whole* did not make it clear that the defendant's burden as to self-defense was limited to raising a reasonable doubt, and that the burden was then on the state to disprove beyond a reasonable doubt that the defendant had acted in self-defense.

It is clear that the circumstances of the instant case are unlike those that faced the court in *Hunter.* In this case, the jury was given the following instruction on the proper evaluation of a claim of self-defense:

The State's burden to prove beyond a reasonable doubt that the Defendant committed the crime goes to the whole case, including a plea or justification based on self-defense.

If you find the Defendant, Robert Ruelas, has offered evidence that he acted in self-defense then the State has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense.

Because the risk at which *Hunter* was directed is not present in this case, there was no fundamental error requiring a new trial. *State v. Cannon,* 157 Ariz. 107, 755 P.2d 412 (1988).

In suggesting a contrary result, the dissent in the case at hand misinterprets our supreme court's holding in *Hunter.* Contrary to the dissent's analysis, the court in *Hunter* did not forever condemn the giving of the disputed instruction as fundamental error *per se.* It found reversible error *in that case* only after considering the instructions as a whole and finding that the trial court's general instruction on the state's burden of proof was insufficient.[1]

## ADMISSIBILITY OF THE VICTIM'S HEARSAY STATEMENTS

During trial, statements that the victim made to police officers shortly after he arrived at the emergency room on the night that he was stabbed and on the following morning were admitted into evidence. The trial court found that the first statements were admissible as either excited utterances, statements made under belief of impending death, or otherwise trustworthy statements under the residual hearsay exceptions of Rules 803 and 804, Arizona Rules of Evidence. The court found that the second statement was admissible as a trustworthy statement under the residual hearsay exceptions. Defendant argues that the statements made at the emergency room were not made under the fear of impending death or as excited utterances and that neither statement met the test of "trustworthiness" under Rule 804(b)(5). He contends that the victim's relationship with defendant's ex-girlfriend provided a motive to fabricate. He also argues that the passage of time was sufficient to allow fabrication. (The statements occurred within an hour and a half and thirty-six hours, respectively, of the incident.)

Rule 804(b)(5), Arizona Rules of Evidence, provides in pertinent part as follows:

*Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, [is admissible] if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

In admitting both statements, the trial court found that the general purposes of the rule would best be served by their admission. The court was aware that the victim made the statements while he was either in the emergency room or in intensive care. The victim was obviously in serious condition, and he made the statements shortly after he was stabbed. The victim's account of the fight and stabbing clearly concerned a material fact and was

---

**1.** The dissent's concern that the jury might have been confused also fails to take into account the closing arguments, wherein both counsel ac-

knowledged the correct burden of proof on the self-defense issue.

more probable on the point for which it was offered than any other evidence that the state could produce. Whether such statements have "equivalent circumstantial guarantees of trustworthiness" must be evaluated by looking at each case individually and determining the reliability of the particular evidence based on the circumstances that existed at the time of the event. *See State v. Ramirez,* 142 Ariz. 171, 176, 688 P.2d 1063, 1068 (App.1984).

■ In *Ramirez,* several factors were identified as important in determining the admissibility of statements under the catch-all exception of Rule 804(b)(5). Those factors include the presence of an oath or cross-examination; the ability of the declarant to perceive clearly; the amount of time after the event; whether the statement was corroborated; whether the statement was self-incriminatory in nature; whether the statement was ambiguous or explicit; and whether multiple levels of hearsay existed. *Id.* Evaluating those factors in the context of the evidence in this case, it is obvious that the victim had an opportunity to clearly perceive what had happened. The amount of time between the incident and the statements was of short duration. There was circumstantial evidence which tended to corroborate the victim's story in the defendant's ex-girlfriend's testimony and in her statements to the police shortly after the incident occurred. The girl's mother's testimony and the statements that she made to the officers shortly after the event occurred also tended to corroborate the victim's statements. The events of the entire day, some of which were not disputed by the defendant in his testimony, demonstrated that there was friction between the defendant and his ex-girlfriend and that the defendant made threatening statements to the victim. Furthermore, the victim's statements were very explicit and involved no multiple levels of hearsay.

Rule 804(b)(5) allows for judicial discretion in admitting evidence to accommodate unusual situations not foreseen by the drafters of the Rules of Evidence when they enumerated the other four exceptions contained in Rule 804. *State v. Robles,* 135

Ariz. 92, 95, 659 P.2d 645, 648 (1983). Such a situation was presented by this case because the statements were not necessarily admissible as dying declarations or as excited utterances. However, as noted above, the other circumstances that were reviewed by the trial judge sufficiently supported the admissibility of the evidence so that the exercise of his discretion in admitting the evidence under Rule 804(b)(5) should not be disturbed on appeal.

## LIMITATION ON THE IMPEACHMENT OF DEFENDANT'S EX–GIRLFRIEND

■ Defendant argues that the trial court erred in refusing to allow defense counsel to cross-examine defendant's former girlfriend with a juvenile adjudication for forgery. Defendant's ex-girlfriend testified that she was an eyewitness to the stabbing, and defendant argues that her credibility was a key factor in the case. Thus, he contends that her impeachment with the prior juvenile adjudication was necessary for a fair determination of the issue of guilt or innocence.

After defendant stabbed the victim, he not only fled from the immediate area, but from the state as well. He was not recaptured until approximately seven years later. By the time of trial, the juvenile adjudication that defendant wished to utilize was nine years old.

Rule 609(d), Arizona Rules of Evidence, provides that evidence of a juvenile adjudication is generally not admissible to impeach a witness at trial. That rule, however, permits a court, in its discretion, to allow impeachment by a juvenile adjudication if the conviction would be admissible to attack the credibility of an adult and the court is satisfied that its admission "is necessary for a fair determination of the issue of guilt or innocence."

A similar issue was presented in *State v. Morales,* 120 Ariz. 517, 587 P.2d 236 (1978). In that case, a state's witness testified that he had seen the defendant with two other individuals in the vicinity of a park in which a homicide had occurred. The witness had previously been adjudicated delinquent for an offense that would have amounted to

the crime of burglary if he had been charged as an adult. Defense counsel sought to use the juvenile adjudication to attack the general credibility of the witness. The trial court refused to allow cross-examination with the prior adjudication, and the defendant argued on appeal that he had been denied his constitutional right to a full and effective cross-examination of an accusing witness. Distinguishing *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the court found that the defense only sought to use the witness' juvenile record to attack his general credibility and that it did not seek to establish a bias or motive for his trial testimony with it. *Morales*, 120 Ariz. at 521, 587 P.2d at 240. The court therefore concluded that the trial court had properly exercised its discretion in excluding the evidence.

Although *Morales* was not decided under the new Rules of Evidence, it is clear that Rule 609(d) has continued to recognize the discretion vested in the trial court to carry out this state's policy behind the general inadmissibility of juvenile adjudications for impeachment purposes. *See Id.* at 520, 587 P.2d at 239. Because this adjudication was more than nine years old by the time of trial and involved a witness who had thereafter remained a law-abiding citizen, we cannot say that the trial court clearly abused its discretion in determining that impeachment with the prior adjudication was not "necessary for a fair determination of the issue of guilt."

## SELECTION OF THE ALTERNATE JUROR

■ Defendant argues that the trial judge erred in selecting the alternate juror because Rule 18.5, Arizona Rules of Criminal Procedure, requires that the "clerk" draw the alternate by lot. Defendant acknowledges that *State v. Blackhoop*, 158 Ariz. 472, 475, 763 P.2d 536, 539 (1988), recognized that in most cases technical error in the selection of the alternate does not require a new trial. Defendant states that he does not contend that the trial judge's selection of the alternate juror in

this case demands a reversal, but that he has only brought it to this court's attention on the assumption that a new trial will be granted and that this court will instruct the trial court regarding the appropriate procedure to be followed on remand. We agree with defendant's conclusion that the trial judge's selection of the alternate juror in this case was technical error that does not require a new trial.

## CONCLUSION

Pursuant to A.R.S. section 13–4035, we have reviewed the record for fundamental error and find none. The judgment and sentence are affirmed.

GRANT, C.J., concurs.

CLABORNE, Judge, dissenting:

I respectfully dissent. I agree with the majority's result concerning the instruction on negligent homicide, the admissibility of the victim's hearsay statements, the trial court's limitation of impeachment of the defendant's girlfriend, and the court's position on the selection of an alternate juror.

I depart, however, from the majority concerning its analysis and result on the self-defense instruction using language which was specifically and clearly repudiated in *State v. Hunter*, 142 Ariz. 88, 688 P.2d 980 (1984). *Hunter* decided that this instruction was unacceptable *five years ago*. It is unacceptable now.

The instruction in *Hunter* was:

> If you decide the defendant's conduct was justified, you must find the defendant not guilty.

*Id.* at 89, 688 P.2d at 981.

When instructing the jury on the issue of justification in this case, the court said:

> Twenty; in this case the Defendant, Robert Ruelas, has raised the defense of justification, claiming that he acted in self-defense.
>
> If you decide that the Defendant's conduct in stabbing Eugene Parker was justified, you must find the Defendant not guilty of the crime charged.

The remainder of instruction twenty set forth the legal elements required in a justification instruction.[2]

The "Hunter" language has been condemned not only because it is an incorrect statement of the law, but also because it creates a *"risk* that the jury would believe that the *accused* had the burden to prove justification." *State v. Cannon,* 157 Ariz. 107, 107, 755 P.2d 412, 412 (1988) (emphasis added).[3]

The instruction which the majority believes solves the issue is:

Twenty-three; the State's burden to prove beyond a reasonable doubt that the Defendant committed the crime goes to the whole case, including a plea or justification based on self-defense.

I do not quarrel with this instruction. However, it does not solve the vice condemned in *Hunter.*

The thrust of the majority's reasoning is simple. Since the correct instruction, they say, was given defining how the state's burden of proof was to be applied, the condemned *"Hunter"* language couldn't possibly influence erroneous application of the law.

The majority must concede that the giving of the instruction containing the *Hunter* language was error. The question is whether this error was fundamental.

As a general proposition, giving erroneous jury instructions defining burden of proof is considered fundamental error.

*State v. King,* 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988); *State v. Hunter,* 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984) (quoting *State v. Denny,* 119 Ariz. 131, 134, 579 P.2d 1101, 1104 (1978)). *See also State v. Tittle,* 147 Ariz. 339, 342, 710 P.2d 449, 452 (1985) (similar holding on justification instruction); *State v. Renforth,* 155 Ariz. 385, 388, 746 P.2d 1315, 1318 (App.1987) (insanity defense). One of the basic reasons for this general proposition was stated in *King:*

At best, taken as a whole, the instructions were confusing and misleading. Long ago we stated,

It is the duty of the court to give the jury the rules of law to guide their deliberations and determinations, and these rules must not be at such cross purposes as to confuse and mislead the jury. If the instructions are contradictory upon the main point in question, how is the jury to know which to follow, or which is a correct statement of the law?

*King,* 158 Ariz. at 425–26, 763 P.2d at 245–46 (quoting *Hurley v. State,* 22 Ariz. 211, 222, 196 P. 159, 163 (1921)).

Like it or not, a reading of the instructions dealing with self-defense (twenty and twenty-three) can easily present a clear risk of confusion. When a layman, unfamiliar with the vagaries of burden of proof, reads one instruction he could easily conclude that the defendant must show facts

---

**2.** A Defendant is justified in using physical force in self-defense if the following two conditions exist: One; a reasonable person in the Defendant's situation would have believed that physical force was immediately necessary to protect against its use or another's attempted use of physical force.

And two; and I'm sorry. A reasonable person in the Defendant's situation would have believed that physical force was immediately necessary to protect against its use or attempted use of physical force.

And two; the Defendant used no more physical force than would have appeared necessary to a reasonable person in the Defendant's situation.

Self-defense justifies the use of physical force only while the apparent danger continues. The right to use physical force in self-defense ends when the apparent danger ends.

Actual danger is not necessary to justify the use of physical force and self-defense. It is enough if a reasonable person in the Defendant's situation would have believed he was in immediate physical danger.

Words alone will not justify using physical force or deadly physical force, as will be indicated in the next instruction.

**3.** The majority relied on *State v. Cannon,* 157 Ariz. 107, 755 P.2d 412 (1988) for the proposition that if the risk at which *Hunter* was directed is not present, there is no fundamental error. A reading of *State v. Cannon,* 157 Ariz. 107, 755 P.2d 412 (1988), and *State v. Cannon,* 133 Ariz. 216, 650 P.2d 1198 (1982), clearly indicates, *unlike the present case,* that the condemned instruction was never given in the trial court and the instruction objected to did not violate the rule concerning the state's burden of proof.

sufficient to convince the jury that the defendant's acts were justified. Then, upon reading instruction twenty-three, he could easily wonder what facts were really necessary to either convict or acquit on the basis of self-defense. Could a juror here *easily* say which instruction should be followed? My belief has always been that jurors need instructions which are clear in content and devoid of "legalese." Any set of instructions which lends itself to confusion defeats the purpose of giving them. In *State v. Denny*, 119 Ariz. 131, 579 P.2d 1101 (1978), the importance of clear instructions in a criminal jury trial was stressed in these words:

> The very purpose of a jury charge is to flag the jurors' attention to concepts that must not be misunderstood, such as reasonable doubt and burden of proof. *Lakeside v. Oregon*, 435 U.S. 333, 340, 98 S.Ct. 1091, 1095, 55 L.Ed.2d 319 (1978). It is vital that the jury not misunderstand the concept of the defendant's burden of proof on self-defense; the jury must be instructed with great care to prevent the misunderstanding of this concept.

*Id.* at 134, 579 P.2d at 1104.

Does not burden of proof require, especially in a criminal jury trial, a clear definition? If so, does the giving of a repudiated instruction which runs the *risk* of confusing a jury on such a central issue become fundamental error? I think so. Facts upon which a central defense rests are more often than not in sharp dispute. To resolve such a dispute on a material issue, the instructions should be clear and unambiguous.

Finally, under the majority's reasoning, one may continue to use the repudiated language found in *Hunter*. All that needs to be done is to provide a correct statement and place it somewhere in the instructions to the jury. There were twenty-eight separate instructions in this case. Interestingly, the jury still had questions concerning law and facts!

Simply giving a correct statement of the law on a central issue does not correct the vice of also giving a repudiated erroneous one. Reading them together, as we must, results in the gravest of errors—lack of clear direction. The error was fundamental, and I would reverse.